1  KIMBERLY Y. CHIN, State Bar No. 271333
   kchin@aghwlaw.com
2  STEVEN D. WERTH, State Bar No. 121153
   swerth@aghwlaw.com
3  MARIA NOZZOLINO, State Bar No. 302368
   mnozzolino@aghwlaw.com
4  ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
   180 Montgomery Street, Suite 1200
5  San Francisco, CA  94104
   Telephone:      (415) 697-2000
6  Facsimile:      (415) 813-2045

7  Attorneys for Defendant
   CITY OF FREMONT

8

9

10                    UNITED STATES DISTRICT` COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12

13  TEMPLE OF 1001 BUDDHAS,          Case No. 3:21-cv-04661
    MIAOLAN LEE,
14                                   **MEMORANDUM OF POINTS AND**
                 Plaintiffs,         **AUTHORITIES IN SUPPORT OF**
15                                   **DEFENDANT CITY OF FREMONT'S**
         v.                          **MOTION TO DISMISS PLAINTIFFS'**
16                                   **COMPLAINT (F.R.C.P. 12(B)(6))**
    CITY OF FREMONT,
17                                   Hon. Charles Breyer
                 Defendant.
18                                   Date:      September 2, 2021
                                     Time:      10:00 a.m.
19                                   Ctrm:      6

20                                   Trial:     None Set

21

22

23

24

25

26

27

28

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

449825.2

**TO THE COURT, ALL PARTIES, and THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on September 2, 2021 at 10:00 a.m., in Courtroom 6, on the 17th Floor of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant City of Fremont ("City") will, and hereby does, move the Court for an order dismissing Plaintiffs Temple of 1001 Buddhas ("Temple") and Miaolan Lee's ("Lee") (collectively "Plaintiffs") Complaint, pursuant to F.R.C.P. 12(b)(6), on the grounds that it fails to state a claim. Specifically:

1. Plaintiffs' Fifth, Sixth, and Twelfth Claims for Relief are barred for failing to comply with the tort claim presentation requirements.

2. Plaintiffs plead insufficient facts to state their First and Third Claims for Relief arising out of due process violations under the First and Fourteenth Amendments.

3. Lee pleads insufficient facts to state her Second Claim for Relief arising out of due process violations under the First and Fourteenth Amendments.

4. Lee's Fourth Claim for Relief is barred by the applicable statute of limitations and there are insufficient facts to state a claim arising out of searches of property under the Fourth Amendment.

5. Lee's Fifth Claim for Relief is barred by the applicable statute of limitations and there are insufficient allegations to state a claim arising out of a violation of invasion of privacy under Article 1, Section 1 of the California Constitution.

6. Lee pleads insufficient facts to state her Sixth Claim for Relief arising out of a violation of The Unruh Civil Rights Act.

7. Plaintiffs plead insufficient facts to state their Seventh, Eighth, and Ninth Claims for Relief based on the Religious Land Use and Institutionalized Persons Act ("RLUIPA") because Fremont Municipal Code 18.55.110, on its face, does not exclude religious uses.

8. Plaintiffs plead insufficient facts to state their Tenth Claim for Relief because the Amended Notice and Order to Abate Nuisance is not a land use regulation.

9. Plaintiffs plead insufficient facts to state their Twelfth Claim for Relief because Fremont Municipal Code 18.55.010, does not violate Article 1, Section 4 of the California

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

i

CITY'S MOTION TO DISMISS
3:21-CV-04661

449825.2

1    Constitution.

2        This motion is further based on this Notice, on the Memorandum of Points and

3    Authorities below, the Request for Judicial Notice, and all exhibits attached, the Court's file in

4    this matter, the [Proposed] Order, and on such oral and/or documentary evidence as may be

5    presented at the hearing of this motion.

6                        **STATEMENT OF RELIEF SOUGHT**

7        The City seeks an order in its favor and against Plaintiffs pursuant to Federal Rules of

8    Civil Procedure section 12(b)(6) and dismissing Plaintiffs' Complaint (Dkt. No. 1) and every

9    claim for relief therein against the City with prejudice.

10

11                              Respectfully submitted,

12   Dated: July 9, 2021              ALLEN, GLAESSNER,
                                      HAZELWOOD & WERTH, LLP

13

14                              By:  __/s/ Kimberly Y. Chin_____
                                     KIMBERLY Y. CHIN
15                                   STEVEN D. WERTH
                                     MARIA NOZZOLINO
16                                   Attorneys for Defendant
                                     CITY OF FREMONT

17

18

19

20

21

22

23

24

25

26

27

28

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

ii

CITY'S MOTION TO DISMISS
3:21-CV-04661

449825.2

**ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP**
180 Montgomery Street, Suite 1200
San Francisco, California 94104

# TABLE OF CONTENTS

Page

I.     STATEMENT OF ISSUES TO BE DECIDED ............................................... 1

II.    INTRODUCTION ..................................................................................... 1

III.   PLAINTIFFS' PLEADING ALLEGATIONS ............................................... 2

IV.    FREMONT MUNICIPAL CODE CHAPTER 18.55 .................................... 4

V.     PLAINTIFFS FAILED TO COMPLY WITH THE CLAIM REQUIREMENTS ......... 5

VI.    THIS COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY ................. 6

       A.   State Law Claims are Barred for Failing to Comply with Claim Procedures ...... 7

       B.   Plaintiffs Fail to State Claims One through Four Under 42 U.S.C. § 1983 ....... 10

            1.   First Claim for Religious Discrimination is Insufficiently Pleaded ...... 10

                 a.   No Prima Facie Case for Religious Discrimination .................. 11

                 b.   Insufficient Allegations to Support Disparate Treatment Claim ................................................................ 12

            2.   Second Claim Based on Race/National Origin is Insufficiently Pleaded .............................................................. 13

            3.   Third Claim for Retaliation is Insufficiently Pleaded ........................... 13

            4.   Fourth Claim for Unreasonable Search and Seizure Fails ................... 14

                 a.   The Fourth Claim for Relief is Untimely ................................ 15

                 b.   No Claim Against the City for the December 7, 2017 Inspection ...................................................................... 15

                 c.   The 2018 Inspections were Conducted with Valid Warrants ..... 15

                 d.   The Cameras, Utilization of Neighborhood Informants, and the Overhead Surveillance Are Not Fourth Amendment Violations ...................................................................... 17

       C.   Lee Has Not Sufficiently Pleaded Her Fifth Claim for Invasion of Privacy ..... 18

       D.   Plaintiff Lee Fails to Establish Violation of The Unruh Civil Rights Act ......... 19

       E.   Plaintiffs Fail to State Claims Seven through Eleven Based on RLUIPA ......... 20

            1.   No RLUIPA Claims Based on FMC 18.55.110 ................................ 21

            2.   No RLUIPA Claim Based on the Amended Notice and Order to Abate ............................................................................ 23

            3.   No RLUIPA Claim Based on the Land Conservation Contract ............ 24

       F.   Plaintiffs Fail to State Their Twelfth Claim Based on California Constitution Article I, Section 4 ................................................ 24

VII.   CONCLUSION ....................................................................................... 25

449825.2

# TABLE OF AUTHORITIES

Page

**U.S. Supreme Court**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...........................................................................................7

*Associated General California, Inc. v. California State Council of Carpenters,*
459 U.S. 519 (1983)...........................................................................................7

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)...........................................................................................6

*California v. Ciraolo,*
476 U.S. 207 (1986).........................................................................................17

*Cantwell v. State of Conn.,*
310 U.S. 296 (1940).........................................................................................10

*Emp. Div., Dep't of Hum. Res. of Or. v. Smith,*
494 U.S. 872 (1990).........................................................................................10

*Florida v. Riley,*
488 U.S. 445 (1989).........................................................................................17

*Furnco Construction Corp. v. Waters,*
438 U.S. 567 (1978).........................................................................................12

*Graham v. Connor*
490 U.S. 386 (1989).........................................................................................10

*Katz v. United States,*
389 U.S. 347 (1967).........................................................................................17

*Laird v. Tatum*
408 U.S. 1 (1972).............................................................................................18

*Lemon v. Kurtzman*
403 U.S. 602 (1971).........................................................................................25

*McCleskey v. Kemp,*
481 U.S. 279 (1987).........................................................................................11

*Owens v. Okure*
488 U.S. 235 (1989).........................................................................................15

*Smith v. Maryland*
442 U.S. 735 (1979).........................................................................................17

*United States v. Jones*
565 U.S. 400 (2012).........................................................................................17

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

CITY'S MOTION TO DISMISS
3:21-CV-04661

449825.2

1

2

# TABLE OF AUTHORITIES

<u>Page</u>

3

4

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*
    429 U.S. 252 (1977)...................................................................................................11

5

**Ninth Circuit Court of Appeals**

6

7

*Barren v. Harrington*
    152 F.3d 1193 (9th Cir. 1998) ...................................................................................11

8

*Barron v. Reich*
    13 F.3d 1370 (9th Cir.1994) .......................................................................................7

9

10

*Bennett v. Medtronic, Inc.*
    285 F. 3d 801 (9th Cir.2002) .....................................................................................7

11

*Bias v. Moynihan*
    508 F. 3d 1212 (9th Cir. 2007) ..................................................................................7

12

13

*Bravo v. City of Santa Maria*
    665 F.3d 1076 (9th Cir. 2011) .................................................................................15

14

*Calvary Chapel Bible Fellowship v. Cnty. of Riverside*
    948 F.3d 1172 (9th Cir. 2020) ............................................................................21, 23

15

16

*Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*
    651 F.3d 1163 (9th Cir. 2011) ............................................................................21,24

17

*Cingular Wireless Services, Inc.*
    622 F. 3d 1035 (9th Cir. 2010) ..................................................................................7

18

19

*Del Percio v. Thornsley*
    877 F2d 785 (9th Cir. 1989) ....................................................................................15

20

*Ewing v. City of Stockton*
    588 F.3d 1218 (9th Cir. 2009) .................................................................................16

21

22

*Guru Nanak Sikh Soc. of Yuba County v. County of Sutter*
    456 F.3d 978 (9th Cir. 2006.) ...................................................................................20

23

*Hispanic Taco Vendors of Washington v. City of Pasco*
    994 F.2d 676 (9th Cir. 1993) ....................................................................................11

24

25

*Int'l Church of Foursquare Gospel v. City of San Leandro*
    673 F.3d 1059 (9th Cir. 2011) .................................................................................20

26

*Knievel v. ESPN*
    393 F.3d 1068 (9th Cir. 2005) ...................................................................................7

27

28

*Lee v. City of Los Angeles*
    250 F.3d 668 (9th Cir. 2001) ....................................................................................11

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

v

CITY'S MOTION TO DISMISS
3:21-CV-04661

449825.2

1

## TABLE OF AUTHORITIES

2

<u>Page</u>

3

*McCalden v. Cal. Library Ass'n,*
  955 F.2d 1214 (9th Cir. 1990) ................................................................ 12

4

*Mendocino Environmental Center v. Mendocino County*
  192 F.3d 1283 (9th Cir. 1999) ................................................................ 14

5

*RK Ventures, Inc. v. City of Seattle,*
  307 F.3d 1045 (9th Cir. 2002) ................................................................ 12

6

7

*San Jose Christian College v. City of Morgan Hill,*
  360 F.3d 1024 (9th Cir. 2004) ................................................... 20, 22, 23

8

*Schneider v. California Dept. of Corrections,*
  151 F.3d 1194 (9th Cir. 1998) .................................................................. 6

9

10

*Serrano v. Francis,*
  345 F.3d 1071 (9th Cir. 2003) ................................................................ 11

11

*Shakur v. Schriro,*
  514 F.3d 878 (9th Cir.2008) ................................................................... 12

12

13

*Silveira v. Lockyer,*
  312 F.3d 1052 (9th Cir. 2002) ................................................................ 12

14

*Skoog v. Cnty. of Clackamas,*
  469 F.3d 1221 (9th Cir.2006) ................................................................. 14

15

16

*Sprewell v. Golden State Warriors,*
  266 F. 3d 979 (9th Cir. 2001) ................................................................... 7

17

*Thornton v. City of St. Helens,*
  425 F.3d 1158 (9th Cir.2005) ................................................................. 12

18

19

*United States v. Dubrofsky,*
  581 F.2d 208 (9th Cir. 1978) .................................................................. 17

20

*U.S. v. Gonzalez*
  328 F.3d 543, 548 (9th Cir. 2003) .......................................................... 17

21

22

*United States v. Smith,*
  588 F.2d 737 (9th Cir. 1978) .................................................................. 16

23

*U.S. v. Taketa*
  923 F.2d 665 (9th Cir. 1991) .................................................................. 17

24

25

*Western Mining Council v. Watt,*
  643 F. 2d 618 (9th Cir. 1981) ................................................................... 7

26

27

28

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

CITY'S MOTION TO DISMISS
3:21-CV-04661

449825.2

1

## TABLE OF AUTHORITIES

2

<u>Page</u>

**Other Circuit Courts**

*Anderson v. Davilla*
    125 F.3d 148 (3d Cir. 1997) ......................................................................18

*Wilson v. Russo*
    212 F.3d 781 (3d Cir. 2000) ......................................................................16

**California Supreme Court**

*Stockett v. Asso'c of California Water Agencies Joint Powers Insurance Authority*
    34 Cal.4th 446 (2004) ................................................................................8

*City of San Jose v. Superior Court*
    12 Cal.3d 447 (1974) .................................................................................8

*Harris v. Capital Growth Investors XIV*
    52 Cal.3d 1142 (1991) .............................................................................19

*Hill v. Nat'l Collegiate Athletic Ass'n.*
    7 Cal.4th 1 (1994) ....................................................................................18

*State v. Superior Court*
    32 Cal.4th 1234 (2004) ..............................................................................9

**California Court of Appeals**

*Foothill Communities Coalition v. Cnty of Orange*
    222 Cal.App.4th 1302 (2014) ...................................................................25

*Gong v. City of Rosemead*
    226 Cal.App.4th 363 (2014) ..............................................................7, 8, 9

*Hersant v. Dept. of Social Services*
    57 Cal.App.4th 997 (1997) .......................................................................19

*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*
    129 Cal.App.4th 1228 (2005) ...................................................................19

*Johnson v. City of Oakland*
    188 Cal.App.2d 181 (1961) ........................................................................8

*Munoz v. State of California*
    33 Cal.App.4th 1767 (1995) .......................................................................8

*Sanchez-Scott v. Alza Pharms.*
    86 Cal.App.4th 365 (2001) .......................................................................19

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

CITY'S MOTION TO DISMISS
3:21-CV-04661

449825.2

# TABLE OF AUTHORITIES

Page

*Watson v. State of California*
21 Cal.App.4th 836 (1993) ....................................................................................7

**Federal District Courts**

*Airtouch Cellular v. City of El Cajon*
83 F.Supp.2d 1158 (S.D. Cal. 2000)....................................................................10

*Anselmo v. Cnty. of Shasta*
873 F.Supp.2d 1247 (E.D. Cal. 2012) ............................................................21, 23

*Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma*
644 F.Supp.2d 1177 (N.D. Cal. 2009) ...............................................................8, 9

*Doe By and Through Doe v. Petaluma City School Dist.*
830 F. Supp. 1560 (N.D. Cal. 1996) ......................................................................8

*New Harvest Christian Fellowship v. City of Salinas*
463 F.Supp.3d 1027, 1042 (N.D. Cal. 2020.) .................................................21, 22

*Rhabarian v. Cawley*, No. 2:10-cv-00767-TLN-KJN,
2013 WL 4049600, at *9 (E.D. Cal. Aug. 7, 2013) ............................................16

**Federal Statutes**

42 U.S.C. § 1983 ................................................................................iii, 2, 10, 11

42 U.S.C. § 2000cc ........................................................................................20, 21

42 U.S.C. § 2000cc(b)(2) .......................................................................................21

42 U.S.C. § 2000cc(b)(3) .......................................................................................21

42 U.S.C. 2000cc-5(5) ...........................................................................................23

F.R.C.P. 12(b)(6).........................................................................................1, i, 6

**California Government Codes**

Govt. Code §910 ...............................................................................................8, 9

Govt. Code §910(d)..................................................................................................9

Govt. Code §910(e)................................................................................................10

Govt. Code §911.2(a)...............................................................................................8

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

449825.2

# TABLE OF AUTHORITIES

Page

Govt. Code §945.4 ................................................................................. 8

Govt. Code §945.6 ................................................................................. 9

**State Statutes**

Cal. Civ. Code §51(a) .......................................................................... 19

Cal. Code Civ. Proc. §335.1 ................................................................ 15

**Other Statutes**

Article I, Section 1 of the California Constitution ............................... i, 1,18

Article I, Section 4 of the California Constitution ............................... ii, 1

Article I Section 12 of the California Constitution .............................. 18

U.S. Const., Amend. I .......................................................................... 10

FMC 18.25.3080 .................................................................................. 5

FMC 18.55 ........................................................................................... 4, 23

FMC 18.55.010 .................................................................................... 5, 25

FMC 18.55.010(a)-(e) .......................................................................... 5

FMC 18.55.110 .................................................................. iii, 1, 2, 5, 21, 22, 23, 24, 25

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

ix

449825.2

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   STATEMENT OF ISSUES TO BE DECIDED

This motion presents the following questions: (1) Whether Plaintiffs' state law claims (Fifth, Sixth, and Twelfth Claims) are barred for failing to comply with the tort claim presentation requirements; (2) Whether Plaintiffs fail to state their First and Third Claims arising out of due process violations under the First and Fourteenth Amendments; (3) Whether Plaintiff Lee fails to state her Second Claim arising out of due process violations under the First and Fourteenth Amendments; (4) Whether Plaintiff Lee fails to state her Fourth Claim arising out of alleged violations of the Fourth Amendment; (5) Whether Plaintiff Lee fails to state her Fifth Claim arising out of invasion of privacy under Article 1, Section 1 of the California Constitution; (6) Whether Plaintiff Lee fails to state her Sixth Claim based on The Unruh Civil Rights Act; (7) Whether Plaintiffs fail to state the Seventh, Eighth, and Ninth Claims that Fremont Municipal Code 18.55.110 violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); (8) Whether Plaintiffs fail the state the Tenth Claim that the City's abatement proceedings violates RLUIPA; (9) Whether Plaintiffs fail to state their Eleventh Claim that the Land Conservation Contract violates RLUIPA; and (10) Whether Plaintiffs fail to state the Twelfth Claim that Fremont Municipal Code 18.55.110 violates Article 1, Section 4 of the California Constitution.

## II.   INTRODUCTION

This action arises out of a years-long code enforcement action concerning 6800 Mill Creek Road in Fremont, California ("Subject Property"), which Plaintiff Miaolan Lee ("Lee") initially purchased, and later transferred to Plaintiff Temple of 1001 Buddhas ("Temple") while the code enforcement action was pending.

After a previous code enforcement action in 2013-2014, Lee began making extensive alterations and additions to the Subject Property, including construction of new structures. As such, beginning in 2017, code enforcement received and investigated complaints regarding numerous unpermitted construction activities at the Subject Property, ultimately resulting in the City issuing its most recent Amended Notice and Order to Abate Nuisance on March 11, 2021.

CITY'S MOTION TO DISMISS
3:21-CV-04661

449825.2

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

Plaintiffs allege the City of Fremont ("City") engaged in religious and racial discrimination and is prohibiting Plaintiffs from exercising their constitutional right to use the Subject Property for religious purposes. However, the state law claims are barred for failing to comply with the claim presentation requirements, the Fourth Claim is barred by the applicable statute of limitations, and no claim for relief is sufficiently pleaded. For those reasons, the City brings this motion to dismiss Plaintiffs' Complaint in its entirety.

### III.    PLAINTIFFS' PLEADING ALLEGATIONS

On June 17, 2021, Plaintiffs filed their complaint. (Dkt. No. 1). Plaintiffs' complaint alleges twelve claims for relief against the City. (Dkt. No. 1.) In support of these claims, Plaintiffs allege the Temple is a religious institution but not a religious assembly. (Dkt. No. 1 at ¶ 7.) Lee is an Asian individual and a master of the Buddhist religion. (Dkt. No. 1 at ¶ 8.) Plaintiffs seek to establish a private temple and meditation facilities at the Subject Property. (Dkt. No. 1 at ¶ 1.) The City's actions violate provisions of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (Dkt. No. 1 at ¶ 2.) In addition, Plaintiffs allege discrimination and violation of their constitutional rights pursuant to 42 U.S.C. § 1983. (Dkt. No. 1 at ¶ 2.) Plaintiffs allege they complied with the claim presentation requirements. (Dkt No. 1 at ¶ 4.)

Lee purchased the Subject Property on October 29, 2010 and deeded it to the Temple on March 12, 2018. (Dkt No. 1 at ¶¶ 13-14.) The Subject Property is subject to a Land Conservation Contract entered into on February 17, 1978 by a prior owner. (Dkt. No. 1 at ¶¶ 15-16.) The Subject Property is zoned as "Open Space" and is subject to Fremont Municipal Code section 18.55.110. (Dkt. No. 1 at ¶ 19.) Plaintiffs allege no provision of section 18.55.110 allows any form of religious use. (Dkt. No. 1 at ¶ 20.)

Plaintiffs allege that on October 26, 2017, Code Enforcement Manager Leonard Powell ("Powell") sent an email to Lee requesting access to the Subject Property. (Dkt. No. 1 at ¶ 27.) On October 27, 2017, Powell, along with Building Inspector Randy Bohnenstiehl and Environmental Specialist Val Blakely, allegedly trespassed onto the property. (Dkt. No. 1 at ¶ 28.) On December 10, 2017, a California Department of Fish and Game warden allegedly entered the Subject Property without permission or notice. (Dkt. No. 1 at ¶ 30.)

449825.2

On December 28, 2017, Lee sent an email to Powell stating, "You and your team repeatedly violated my Fourth Amendment, these actions have proven to me that you/City of Fremont are using your authority over Asian Religious Women, harassing and discriminating/single me out on and off, for the past few years." (Dkt. No. 1 at ¶ 33.) Lee further alleges Gary West ("West"), the City's Building Department Chief, without notice and believing that Lee would be out of town, sought and obtained an inspection warrant from the Superior Court on February 8, 2018. (Dkt. No. 1 at ¶ 36.) The Subject Property was searched on February 9, 2018. (Dkt. No. 1 at ¶ 38.)

From February 28, 2018 through March 9, 2018, the City placed license plate reading and recording cameras across the street from the Subject Property. (Dkt. No. 1 at ¶ 39.)

On March 29, 2018, the City issued a "Notice and Order to Abate Nuisance," citing numerous alleged violations of the Fremont Municipal Code as authority for its directive to "immediately cease habitation and occupancy" of three structures. (Dkt. No. 1 ¶ 40.)

On May 23, 2018, Code Enforcement Officer Jagtap ("Jagtap") sought an inspection warrant. (Dkt. No. 1 at ¶ 43.) Jagtap declared, "absent consent to enter private property, a warrant is required prior to entry." (Dkt. No. 1 at ¶ 43.) Plaintiffs allege Jagtap provided false information by intentionally omitting that appointments were scheduled, thereby fabricating the "non-consent" requirement of the inspection warrant. (Dkt. No. 1 at ¶ 74.) Plaintiffs further allege Jagtap and Powell knew there was not only consent, but also an appointment for May 25, that Jagtap cancelled, so they could trap Plaintiffs by using the judicial system in a way so that Plaintiffs could not be heard because she is an Asian religious woman. (Dkt. No. 1 at ¶ 43.)

On June 14, 2018, the City issued a notice and order to vacate three buildings: (1) the new two-story structure; (2) the three-story structure that had formerly been a one-story garage; and (3) a two-story building that was formerly a barn on the grounds the buildings were "unlawful, unsafe and unfit for human occupancy." (Dkt. No. 1 at ¶ 47.) The City, through West, told Lee that she could only pray in the "dome" meditation hall and the main house. (Dkt. No. 1 at ¶ 49.) He also told her to remove the Buddha statutes from the Main Buddha Hall. (Dkt. No. 1 at ¶ 49.) On June 26, 2018, the City requested and obtained entry to the Subject Property and "red tagged"

CITY'S MOTION TO DISMISS
3:21-CV-04661

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

449825.2

1   the three buildings. (Dkt. No. 1 at ¶ 50.)

2       On or about August 30, 2018, City Council member Raj Salwan ("Salwan") told Lee that

3   if she wanted to get the status of the three buildings properly permitted, she must "disarm her

4   lawyers" as they were "costing the City too many resources." (Dkt. No. 1 at ¶ 54.)

5       On May 3, 2019, without notice to the Plaintiffs, the City allegedly recorded a notice of

6   substandard building/structure with the Alameda County Recorder's Office. (Dkt. No. 1 at ¶ 59.)

7   On June 3, 2019, Lee sent a letter to Salwan complaining about discriminatory code enforcement

8   and the inspection warrants. (Dkt. No. 1 at ¶ 60.) Salwan conveyed to Lee that Chief City

9   Attorney Harvey Levine said, "the City is ready for a lawsuit" and that they were going to sue her

10  because of her protected activity of opposing unlawful, systemic religious and racial

11  discrimination. (Dkt. No. 1 at ¶ 60.) On September 25, 2019, the City issued two citations. (Dkt.

12  No. 1 at ¶ 61.) Plaintiffs allege it was impossible to complete the application process, and the City

13  wanted the Temple to be torn down. (Dkt. No. 1 at ¶ 62.)

14      On December 12, 2019, Lee alleges Wayne Morris, Deputy Community Director, said the

15  following: "You are using the Buddha as a protective shield"' "Do you think Buddha is ok with

16  this construction?"; "Do you think Buddha is ok with what you are doing?"; "This (the permit

17  process) is going to be so expensive for you that you are just going to give up and demolish" and

18  "things (buildings) need to come out." (Dkt. No. 1. at ¶ 66.)

19      On March 11, 2021, the City issued an Amended Notice and Order to Abate Nuisance.

20  (Dkt. No. 1 at ¶ 75.) Plaintiffs allege that since June 26, 2018, they have not been able to use the

21  three red tagged buildings for their alleged intended purposes as private chapels or places for

22  meditation. (Dkt. No. 1. at ¶ 81.)

23  **IV.   FREMONT MUNICIPAL CODE CHAPTER 18.55**

24      The purpose of Fremont Municipal Code ("FMC") Chapter 18.55, which creates the

25  City's open space district, is "to permit limited but reasonable use of open lands while protecting

26  the public health, safety and welfare from dangers of seismic hazards and unstable soils; preserve

27  the topography of the city that shapes it and gives it its identity; allows land to be used for

28  agricultural production in its natural or as near natural state as possible; coordinate with and carry

CITY'S MOTION TO DISMISS
3:21-CV-04661

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

out regional, county, and city open space plans; and where permitted, encourage the clustering of dwelling units in order to preserve and enhance the remainder of open space lands as a limited and valuable resource." (RJN ¶1, Exh. A at 1 (FMC 18.55.010).) The City's general plan identifies seven different open space land use designations: (1) City Park, (2) General Open Space, (3) Hillside, (4) Hill Face, (5) Hill (beyond Ridgeline), (6) Private Open Space, and (7) Resource Conservation and Public Open Space. (RJN ¶ 1, Exh. A at 1-2 (FMC 18.55.010(a)-(e)); 12-16 (18.55.110.)

FMC 18.55.110 includes a table that "sets forth those uses which are permitted, permitted with approval of a zoning administrator permit, permitted with approval of a conditional use permit, and not allowed in an open space district, and the type of approval each use requires." (RJN ¶1, Exh. A. at 12-16) Religious use is contained within the portion of the table identified for "Public and Quasi-Public Uses," specifically the row relating to "Public or quasi-public use not including: corporation/contractor/fleet/service yards and warehouses or any use specifically listed in this table as a permitted, zoning administrator, or prohibited use." (RJN ¶ 1, Exh. A at 13-14 (FMC 18.55.110).) FMC 18.25.3080 defines "Quasi-public use" as "a use operated by a private, non-profit educational, religious, recreational, charitable or medical institution, with said use having the primary purpose of serving the general public, and including use such as public schools, parks, playgrounds, hospitals, and administrative and service facilities." (RJN ¶ 2, Exh. B.) Public or quasi-public use is allowable in the open space district with a conditional use permit in the following general plan land use designations: (1) City Park, (2) General Open Space, (3) Hillside, and (4) Resource Conservation and Public Open Space. (FMC 18.55.110.)  All public and quasi-public uses are prohibited in the following general plan land use designations: (1) Hill (beyond Ridgeline), (2) Hill Face, and (3) Private. (RJN ¶ 1, Exh. A at 14 (FMC 18.55.110).)

## V.   PLAINTIFFS' TORT CLAIMS

On or about January 12, 2018, Lee presented a tort claim arising out of the inspection that occurred on October 27, 2017. She claimed City employees, Powell, Val Blakely, and Randy (last name unknown) entered her private gated property and took pictures without a warrant or other authorization and without consent. (RJN at ¶ 10, Exh. J.) The City rejected this claim in writing

CITY'S MOTION TO DISMISS
3:21-CV-04661

449825.2

on or about January 24, 2018. (RJN ¶ 11, Exh.  K.)

On or about April 30, 2021, Plaintiffs presented a tort claim. This tort claim identified the date of the occurrence as "October 2017 – to present April 2021." The circumstances giving rise were identified as "Race, Religion, Gender Discrimination, Fraud, Trespass, 4 amend violation of Constitution, whistleblowing to FB ongoo [sic] corruption, intentional infliction of emotional distress." The description of damage or loss was "Civil Rights, emotional distress, invasion of privacy, abuse of power, unconstitutional invasions, fraud, tress. $ amount is up for the jury to decide." (RJN ¶ 12, Exh.  L.) On May 13, 2021, the City served a Notice of Insufficiency. (RJN ¶ 13, Exh. M.)

On or about May 18, 2021, Plaintiffs presented an amended tort claim. This tort claim identified the date of occurrence as "October 2017 to the present, up to today May 18, 2021." The circumstances giving rise to the occurrence were identified as "The City of Fremont has interfered with and/or prevented the practice of my religion by Code Enforcement, Planning & Building Depts. Precluded my association with others of my faith, invasion of privacy. Religious and National Origin Discrim." The description of damage or loss was "Loss of use of real property and structures on real property. Damage to Reputation. Emotional Distress." (RJN ¶ 14, Exh. N.) On June 7, 2021, the City issued another Notice of Insufficiency. (RJN ¶ 15, Exh. O.) No further response was received from Plaintiffs. On July 6, 2021, the City served a Notice of Rejection of Claim and Notice of Untimely Claim. (RJN ¶ 16, Exh. P.)

## VI.  THIS COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY

A defendant may move to dismiss one or more causes of action on the "failure" of the complaint "to state a claim upon which relief can be granted." F.R.C.P. 12(b)(6). "The focus of any Rule 12(b)(6) dismissal ... is the complaint." *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998). A district court should grant a motion to dismiss if plaintiffs have not pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must possess more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*,

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

CITY'S MOTION TO DISMISS
3:21-CV-04661

449825.2

550 U.S. 544, 554 (2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

In determining whether a complaint states a valid claim, the court need not accept legal conclusions, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001); *Western Mining Council v. Watt*, 643 F. 2d 618, 624 (9th Cir. 1981). It is not "proper to assume that [a plaintiff] can prove facts that it has not alleged or that the defendants have violated [laws] in ways that have not been alleged." *Associated General California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft*, 556 U.S. at 679. The court may also review "materials of which the court may take judicial notice." *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir.1994). This includes public records and "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Bias v. Moynihan*, 508 F. 3d 1212, 1225 (9th Cir. 2007) (quoting *Bennett v. Medtronic, Inc.*, 285 F. 3d 801, 803 n. 2 (9th Cir.2002)). Under the "incorporation by reference" doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Dismissal is proper when the complaint fails to allege either a cognizable legal theory or there is an absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F. 3d 1035, 1041 (9th Cir. 2010).

A.    **State Law Claims are Barred for Failing to Comply with Claim Procedures**

The claim presentation requirements are prerequisites to litigation against a local public entity on any claim for "money or damages." *Gong v. City of Rosemead*, 226 Cal.App.4th 363, 374 (2014); *Watson v. State of California*, 21 Cal.App.4th 836, 844 (1993). In enacting the Torts

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

449825.2

Claim Act, the California Legislature did not intend to expand the rights of plaintiffs against public entities, but to confine potential governmental liability to rigidly delineated circumstances. *Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma*, 644 F.Supp.2d 1177, 1205 (N.D. Cal. 2009); *Munoz v. State of California*, 33 Cal.App.4th 1767, 1776 (1995).

No suit for money or damages may be brought against a public entity until a claim has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board. Govt. Code § 945.4. The claim presentation requirements apply to state civil rights actions because they are claims for "money or damages." *Doe By and Through Doe v. Petaluma City School Dist.*, 830 F. Supp. 1560, 1570 n. 7 (N.D. Cal. 1996). Government Code section 910 requires that the claim state, *inter alia*, the "date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted," "a general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim," and "the name or names of the public employee or employees causing the injury, damage, or loss, if known." The claim for injury to person or to personal property must be presented not later than six months after the accrual of the cause of action. Govt. Code § 911.2(a). Compliance is mandatory. *Gong*, 226 Cal.App.4th at 374.

The purpose of the claim presentation requirements is to provide the public entity with sufficient information to enable it to adequately investigate the claim and settle the claim, if appropriate, in order to avoid costly litigation and to inform the public entity of potential liability so that it can better prepare for the upcoming fiscal year. *Stockett*, 34 Cal.4th at 446; *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 455; *Gong*, 226 Cal.App.4th at 377; *Munoz*, 33 Cal.App.4th at 1776. The claim must "fairly describe what the entity is alleged to have done". *Stockett*, 34 Cal.4th at 446. When the claim contains information necessary for a proper investigation, it is substantially compliant with the statute, but if it does not, the claim is insufficient. *Johnson v. City of Oakland*, 188 Cal.App.2d 181, 183 (1961).

Compliance cannot be excused on the theory that the entity was not surprised by the suit. *Gong*, 226 Cal.App.4th at 374. It is not the purpose of the claim statutes to prevent surprise. *City of San Jose*, 12 Cal.3d at 455; *Gong*, 226 Cal.App.4th at 374. The claims statutes must be

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

CITY'S MOTION TO DISMISS
3:21-CV-04661

449825.2

satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim. *Id*. A public entity's actual knowledge of the circumstances surrounding a claim does not constitute substantial compliance or form the basis for estoppel. *Id*.

As such, when a plaintiff pursues an action against a public entity, the plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement. *Comm. for Immigrant Rights*, 644 F.Supp.2d at 1205; *State v. Superior Court*, 32 Cal.4th 1234, 1243 (2004). If a plaintiff alleges compliance with the claim presentation requirement, but the public records do not reflect compliance, the public entity can request the court to take judicial notice that the entity's records do not show compliance. *Gong*, 226 Cal.App.4th at 368 n.1. Failure to demonstrate compliance with the claim presentation requirement subjects a plaintiff's complaint to a motion to dismiss for failure to state a claim upon which relief can be granted. *Comm. for Immigrant Rights*, 644 F.Supp.2d at 1205; *State*, 32 Cal.4th at 1243.

Plaintiffs seek to recover money or damages from the City arising out of their state law claims – their Fifth, Sixth, and Twelfth claims. (Dkt. No. 1 at ¶¶ 122-23, 129-31, 187-88.) While Plaintiffs allege compliance with the claim presentation requirements, a review of the City's records reveals no compliance.

First, any claim arising out of the 2018 tort claim is barred. The City's records show that this claim was rejected in writing on January 24, 2018. As such, Plaintiffs had until July 25, 2018 to bring a lawsuit arising out of those claims but did not. (Govt. Code § 945.6.) Second, the tort claims presented on April 30, 2021 and May 18, 2021 fail to comply with the requirements of Government Code section 910. Both tort claims lack any facts from which the City could understand what it had done so that it could investigate the claim. Despite Government Code section 910 requiring a statement of the "date, place, and other circumstances of the occurrence of transaction," neither claim included any facts relating to the circumstances of the occurrence. None of the tort claims state "[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." (Govt. Code § 910(d).) The tort claims also do not identify "[t]he name or names of the public employee or employees causing the injury, damage, or loss, if known" despite naming multiple

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

CITY'S MOTION TO DISMISS
3:21-CV-04661

449825.2

City employees in the complaint. (Govt. Code § 910(e).) Finally, although the tort claims were presented on behalf of both Plaintiffs, there was no attempt to differentiate the facts or damages in support of each claimant. Indeed, the City twice-advised Plaintiffs of the insufficiency of their tort claims before it ultimately rejected their claims.  (RJN ¶¶ 13, 15, 16, Exhs. M, O, P.)

The City's records demonstrate that Plaintiffs failed to comply with *all* the claim presentation requirements. As such, Plaintiffs' Fifth, Sixth, and Twelfth state claims are barred.

**B.       Plaintiffs Fail to State Claims One through Four Under 42 U.S.C. § 1983**

Plaintiffs' First through Fourth Claims are constitutional causes of action against the City brought pursuant to 42 U.S.C. § 1983. 42 U.S.C § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (citation omitted). In order to state a claim under 42 U.S.C. § 1983, a plaintiff must prove: (1) that a person acting under color of state law committed the conduct at issue; and (2) the conduct violated a federally protected right, privilege, or immunity. *Airtouch Cellular v. City of El Cajon*, 83 F.Supp.2d 1158, 1171-72 (S.D. Cal. 2000). Plaintiffs' First, Second, Third, and Fourth Claims fail to establish the second prong of this test.

**1.       First Claim for Religious Discrimination is Insufficiently Pleaded**

Plaintiffs allege that the City's actions in obtaining search warrants, inspecting the Subject Property for Code Enforcement violations, and issuing notices to abate violated their rights under the Free Exercise Clause of the First Amendment and the Equal Protection clause of the Fourteenth Amendment. (Dkt. No. 1 at ¶¶ 83-87.)

The Free Exercise Clause provides "Congress shall make no law ... prohibiting the free exercise [of religion]." U.S. Const., Amend. I; *see also Cantwell v. State of Conn.*, 310 U.S. 296, 303 (1940) (Free exercise clause applies to the states through the Fourteenth Amendment). "The free exercise of religion means . . . the right to believe and profess whatever religious doctrine one desires." *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990). "The government may not compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

CITY'S MOTION TO DISMISS
3:21-CV-04661

449825.2

1    or dogma." *Id.*

2        "To state a claim under 42 U.S.C. section 1983 for a violation of the Equal Protection

3    Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an

4    intent or purpose to discriminate against the plaintiff based upon membership in a protected

5    class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Village of Arlington*

6    *Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977). "'[T]he absence

7    of proof of discriminatory intent forecloses any claim that the official action challenged . . .

8    violates the Equal Protection Clause of the Fourteenth Amendment.'" *Hispanic Taco Vendors of*

9    *Washington v. City of Pasco*, 994 F.2d 676, 680-81 (9th Cir. 1993); *see also Lee v. City of Los*

10   *Angeles*, 250 F.3d 668, 686-87 (9th Cir. 2001) (must allege motivation by a discriminatory

11   animus to a protected class). "'Discriminatory purpose' . . . implies more than . . . intent as

12   awareness of consequences. It implies that the decision maker ... selected or reaffirmed a

13   particular course of action at least in part 'because of . . . its adverse effects upon an identifiable

14   group.'" *McCleskey v. Kemp*, 481 U.S. 279, 298 (1987); *Serrano v. Francis*, 345 F.3d 1071 (9th

15   Cir. 2003).

16       Plaintiffs claim for religious discrimination fails because: (1) Plaintiffs' fail to plead a

17   *prima facie* case for discrimination; and (2) Plaintiffs have not adequately alleged disparate

18   treatment based on religion.

19                    a.       **No Prima Facie Case for Religious Discrimination**

20       In support of Plaintiffs' claim for religious discrimination, the complaint alleges: "the

21   actions of the [City] in depriving Plaintiffs of the real property for religious purposes is and was

22   motivated by animus against the Plaintiffs' religious beliefs. Said animus is evidenced by the

23   remarks described above by Defendant's agents Morris and Powell about 'hiding behind the

24   Buddha.'" (Dkt. No. 1 at ¶ 87.)  Plaintiffs plead no further facts beyond this conclusory statement.

25       This conclusory allegation is inadequate to establish a *prima facie* case for discrimination.

26   First, there are no specific factual allegations that any of the City's actions were taken *because of*

27   Plaintiffs' Buddhist faith or to create adverse effects. While Plaintiffs point to Morris and

28   Powell's comment, this comment occurred in December 2019, two years *after* the City began its

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

CITY'S MOTION TO DISMISS
3:21-CV-04661

449825.2

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

investigation into complaints relating to the Subject Property. (Dkt. No. ¶¶ 27, 66.) A single comment made in 2019 is insufficient to demonstrate the discriminatory intent of a code enforcement investigation that began in 2017. Other than this comment, there are no other factual allegations evidencing religious discrimination. Plaintiffs have pleaded no specific factual allegations that the City compelled affirmation of religious belief, punished the expression of a religious doctrine, or imposed any special disability based on Plaintiffs' religious beliefs. There are no specific facts showing that the City has taken any action to prohibit, regulate or control Plaintiffs' religious beliefs or practices. This Court can take judicial notice of documents referenced in the complaint that demonstrate the City's intent. (RJN ¶¶ 4-8, Exh. D-I.) At bottom, the complaint contains only conclusory statements such as "Defendant's actions were motivated by animus against Plaintiffs' religious beliefs" (Dkt. No. 1 at ¶ 87) and Defendant "clearly wanted the Temple to be torn down" (Dkt. No 1 at ¶ 62), which are insufficient to state this claim.

### b.   Insufficient Allegations to Support Disparate Treatment Claim

Plaintiffs allege the City's "animus [against Plaintiffs' religious beliefs] is further evidenced by the fact that the non-permitted uses of neighboring properties which are secular were allowed to continue without abatement proceedings." (Dkt. No. 1 at ¶ 87.)  Despite this allegation, Plaintiffs fail to plead the needed elements of a disparate treatment claim.

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Shakur v. Schriro,* 514 F.3d 878, 891 (9th Cir.2008) (citation omitted). For state action to trigger equal protection review, it must be determined that the action treated similarly situated persons disparately. *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002); *McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1990); *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002). The court first identifies the relevant class to which the plaintiff belonged. *See Thornton v. City of St. Helens,* 425 F.3d 1158, 1166 (9th Cir.2005). "The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Id.* at 1167. The evidence must be sufficient to identify actions which, if unexplained, give rise to an inference of discriminatory conduct. *Furnco Construction Corp. v. Waters,* 438 U.S. 567 (1978).

449825.2

First, as discussed above, Plaintiffs have not established a *prima facie* case of discrimination. Second, Plaintiffs' conclusory statements alleging "non-permitted uses of neighboring property which are secular were allowed to continue" is insufficient to allege disparate treatment. There are no facts to support that Plaintiffs and her "neighbor" are similarly situated. There are no facts that multiple building and code violations at the neighboring property were issued and then went unprosecuted – let alone *because* Plaintiffs are Buddhists and the neighbors are not. This Court need not accept the truth of this conclusory argument.

Because Plaintiffs have not sufficiently pleaded religious discrimination or disparate treatment, this Court should dismiss this First Claim for Relief.

### 2. Second Claim Based on Race/National Origin is Insufficiently Pleaded

Lee alleges "the actions of [the City] in depriving [her] of the full usage of the real property were motivated by animus against [her] race and/or national origin. Said animus is evidenced by the fact that the non-permitted uses of neighboring properties owned by non-Asians, including but not limited to Mr. Sabraw, were allowed to continue without abatement proceedings." (Dkt. No. 1 at ¶ 95.) This allegation, without more, is insufficient to state a claim.

Lee pleads no facts regarding the City's alleged discrimination. There are no specific factual allegations showing the City's actions were racially motivated or done with a discriminatory purpose based on her race. There is no allegation of a racially motivated statement. There are no specific factual allegations that a "particular course of action" was selected because of its effect on Asians. This Court can take judicial notice of documents referenced in the complaint that demonstrate the City's intent. (RJN ¶¶ 4-8, Exhs. D-I.) Further, Plaintiff has failed to allege facts necessary to sustain a claim for disparate treatment. While Lee references "neighboring properties and "Mr. Sabraw," there are no allegations that they are similarly situated. The allegations of the complaint fail to show any discrimination on race or national origin so Lee's Second Claim should be dismissed.

### 3. Third Claim for Retaliation is Insufficiently Pleaded

Plaintiffs allege the City retaliated against Lee for her opposition to the City's discriminatory acts against her based on her race/national origin and against her and the Temple

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

13

449825.2

based upon religion. (Dkt. No. 1 at ¶ 102-103.) This alone is insufficient to state this claim.

Where, as here, a plaintiff claims retaliation for exercising a constitutional right, the plaintiff must plead (1) he or she was engaged in constitutionally protected activity, (2) the defendant's retaliatory action caused the plaintiff to suffer an injury that would likely deter a person of ordinary firmness from engaging in that protected activity, and (3) the retaliatory action was motivated, at least in part, by the plaintiff's protected activity. *Mendocino Environmental Center v. Mendocino County* 192 F.3d 1283, 1200-1301 (9th Cir. 1999); *Skoog v. Cnty. of Clackamas,* 469 F.3d 1221, 1235 (9th Cir.2006).

First, Plaintiffs do not plead with any specificity the constitutionally protected activity in which they were engaged or when such activity occurred. Plaintiffs allege the City's retaliatory actions include: the two inspection warrants for the real property (RJN ¶¶ 4, 7, Exhs. D, G.) the overly intrusive nature of the searches pursuant to the inspection warrants; the cameras placed at the front gate to the real property; the Notice and Order to Abate on March 29, 2018 (RJN ¶ 6, Exh. F.) the Notice to Vacate issued on June 14, 2018 (RJN ¶ 8, Exh. H); the recording of the Notice of Substandard building/structure; the two identical citations on September 25, 2019; and the March 11, 2021 Amended Notice and Order to Abate (RJN ¶ 9, Exh. I). (Dkt. No. 1 at ¶103.) But this mere listing of items is insufficient to show that these acts were "motivated" by Plaintiffs' protected activity. Plaintiffs provide no factual allegation linking the protected activity with the alleged retaliatory conduct. As such, Plaintiffs have failed to state their Third Claim for retaliation.

### 4.     Fourth Claim for Unreasonable Search and Seizure Fails

Lee's Fourth Claim alleges an unreasonable search of the Subject Property occurred because the City engaged in trespass; falsifying information in order to obtain inspection warrants; seeking inspection warrants without prior notice to plaintiff; exceeding the scope of the warrants; installing cameras outside the gates of the Subject Property; utilization of neighborhood informants; unnecessary inspections; and overhead surveillance of the Subject Property. (Dkt. No. 1 at ¶ 111.) The complaint identifies four entries onto the Subject Property: October 27, 2017, December 10, 2017, February 9, 2018, and May 24, 2018. (Dkt. No. 1 at ¶¶ 28-30, 36-38, 44-45.)

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

CITY'S MOTION TO DISMISS
3:21-CV-04661

449825.2

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

The inspections of February 9, 2018 and May 24, 2018 were conducted pursuant to warrants. (Dkt. No. 1 ¶¶ 36-38, 44-45.) The cameras installed outside the Subject Property occurred from February 28, 2018 to March 9, 2018. (Dkt. No. 39.) This Claim fails for multiple reasons.

### a.      The Fourth Claim for Relief is Untimely

Section 1983 claims brought in federal court in California are governed by California's statute of limitations for personal injuries. *Owens v. Okure* 488 U.S. 235 (1989); *Del Percio v. Thornsley*, 877 F2d 785 (9th Cir. 1989). California Code of Civil Procedure 335.1 provides a two-year statute of limitations for personal injuries.

Here, the alleged unauthorized entries onto the Subject Property occurred in 2017 and 2018. The cameras installed outside of the property also occurred in 2018. The two-year statute of limitations for the 2017 inspections ran in 2019 and ran in 2020 for the 2018 inspections and the camera installation. Thus, to the extent Lee's claims for Fourth Amendment violations arise out of these entries or the installation of cameras, the two-year statute of limitations bars this claim.

### b.      No Claim Against the City for the December 7, 2017 Inspection

Plaintiffs allege that a warden from the California Department of Fish and Game entered the Subject Property on December 7, 2017. (Dkt. No. 1 at ¶ 30.) Because the Department of Fish and Game is entirely separate entity from the City, the City cannot be held liable for its actions. Therefore, Lee has no Fourth Amendment claim against the City based on this inspection.

### c.      The 2018 Inspections were Conducted with Valid Warrants

The Fourth Amendment "prohibits a search conducted pursuant to an ill-begotten or otherwise invalid warrant." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). A claim for judicial deception must establish that the warrant affidavit contained material misrepresentations or omissions and those misrepresentations or omissions were intentional or reckless. *Id*. A judicial deception claim can be based on a deliberate falsehood or a reckless disregard of the truth. *Id*. With respect to reckless disregard, this involves an inquiry as to whether there is a "'high degree of awareness of [the statements'] probable falsity. An assertion is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the

449825.2

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1   information he reported.'" *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000); *Rhabarian v.*

2   *Cawley*, No. 2:10-cv-00767-TLN-KJN, 2013 WL 4049600, at *9 (E.D. Cal. Aug. 7, 2013)

3   (noting that "a merely sloppy investigation culminating in a search warrant – without a showing

4   of deliberation or recklessness – will not support a judicial-deception claim"); *see also Ewing v.*

5   *City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009) (stating that a judicial deception claim may

6   not be based on an officer's erroneous assumptions about the evidence he has received); *United*

7   *States v. Smith*, 588 F.2d 737, 739-40 (9th Cir. 1978) (stating that an officer "made certain

8   erroneous assumptions on the basis of the information he received; but this does not amount to

9   the reckless inclusion of false statements in his affidavit").

10       Although Lee alleges various misrepresentations and falsehoods, she provides no facts

11   regarding the circumstances of those alleged falsehoods. While Plaintiffs allege Defendants

12   falsified information "on two occasions at least" (Dkt. No. 1 at ¶ 111), there are no allegations

13   identifying the falsified information regarding the February 9, 2018 inspection warrant. Likewise,

14   while Plaintiffs claim deception with the second inspection warrant of May 23, 2018 (Dkt. No. 1

15   at ¶ 43), this is a conclusory statement and insufficient to plead a deliberate falsehood or reckless

16   disregard. In fact, in the May 23, 2018 inspection warrant, the Court found there was ample cause

17   for a search and no consent had been given. (RJN ¶ 7, Exh. G.)

18       The remainder of Lee's assertions regarding the search warrants are that (1) the City did

19   not receive her consent to obtain them and (2) the inspections went beyond the scope of the

20   warrants. (Dkt. No. 1 at ¶ 111.)  First, there is no legal requirement that Lee be provided with

21   notice prior to warrants being obtained. Second, a review of the warrants and the Complaint show

22   that the inspections were within their scope. The complaint alleges that on February 9, 2018, the

23   entire property was searched, including searching every room, opening closets, taking

24   photographs of food, and inspecting Lee's makeup. (Dkt. No. 1 at ¶ 38.) However, the February

25   8, 2018 inspection warrant allowed the City to enter "for inspection of the interior and exterior of

26   the main house, modular home, detached garages and all other structures and improvements" to

27   determine compliance with various State and municipal codes. It also allowed for photography,

28   video, taping, or other approved means of recording. (RJN ¶ 4, Exh. D.) Likewise, the complaint

CITY'S MOTION TO DISMISS
3:21-CV-04661

alleges that on May 24, 2021, the City "wandered all over" the Subject Property. (Dkt. No. 1 at ¶ 45.) However, the May 23, 2021 warrant allowed the City to enter "for inspection of the watercourses, the barn, the garage, the electrical service system, the water supply system, any new structure constructed since February 9, 2018 and the septic/sewage system . . . on the 29-acre parcel" to determine compliance with various State and municipal codes. As such, there can be no claim arising out of the 2018 inspections and warrants.

### d.   The Cameras, Utilization of Neighborhood Informants, and the Overhead Surveillance Are Not Fourth Amendment Violations

Lee further claims that the cameras placed on public property, use of neighborhood informants, and "overhead surveillance" of the Subject Property were unreasonable searches. However, Lee has failed to plead how any of these are Fourth Amendment violations.

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." A Fourth Amendment "search" takes place when the government's investigative activities "violate a person's 'reasonable expectation of privacy." *United States v. Jones*, 565 U.S. 400, 405 (2012) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967)). To establish a reasonable expectation of privacy, a litigant must demonstrate an actual expectation of privacy in the item or location searched, and that the expectation of privacy is "one that society is prepared to recognize as reasonable." *Smith v. Maryland,* 442 U.S. 735, 740 (1979) (internal quotation marks omitted).

Law enforcement officers have the right to occupy and observe conduct where they have a legal right to occupy. *Florida v. Riley*, 488 U.S. 445, 449 (1989); *California v. Ciraolo*, 476 U.S. 207, 213 (1986) (agents "may see what may be seen from a public vantage point where [the have] a right to be"); *United States v. Dubrofsky*, 581 F.2d 208, 211 (9th Cir. 1978) ("[p]ermissible techniques of surveillance include more than the five senses of officers and their unaided physical abilities"). Camera footage of a public place is a permissible law enforcement surveillance technique. *See U.S. v. Gonzalez*, 328 F.3d 543, 548 (2003); *U.S. v. Taketa*, 923 F.2d 665, 677 ("[v]ideo surveillance does not in itself violate a reasonable expectation of privacy . . . the police may record what they normally may view with the naked eye."); *Anderson v. Davila*, 125 F.3d

CITY'S MOTION TO DISMISS
3:21-CV-04661

148, 160 (3d Cir. 1997) ("The Government's surveillance of individuals in public places does not, by itself, implicate the Constitution … police surveillance of public meetings, by itself, was 'legally unobjectionable.'"); *Laird v. Tatum* 408 U.S. 1, 10 (1972) (First Amendment rights could not be chilled by "the mere existence, without more, of a governmental investigative and data gathering activity that is alleged to be broader in scope than is reasonably necessary for the accomplishment of a valid governmental purpose.").)

Here, the cameras were set up on public property – where police had a legal right to occupy and video camera use is permissible. There is no expectation of privacy in a public area. Indeed, the complaint fails to allege any private activity was recorded nor does it allege that Lee had a reasonable expectation of privacy where the cameras were set up. The complaint merely states the City "placed … cameras across the street from the real property gate so as to see who was entering and leaving the property." (Dkt. No. 1 at ¶ 39.) Moreover, the Fremont Police Department placed cameras for a valid purpose. (RJN ¶ 5, Exh. E.) The video surveillance was in furtherance of an investigation that there was criminal activity occurring. *Id.* Thus, it was in furtherance of a valid governmental goal. Further, there are inadequate facts identifying the "overhead surveillance" or, more importantly, how that was an unreasonable search. Likewise, Lee's vague reference to the use of neighborhood informants is insufficient to establish a search. As such, these cannot be the basis for Lee's Fourth claim.

**C.      Lee Has Not Sufficiently Pleaded Her Fifth Claim for Invasion of Privacy**

Plaintiff asserts this claim under Article I, section 12 of the California Constitution for invasion of privacy. (Dkt. No. 1 at ¶117.) However, Article I Section 12 of the California Constitution addresses the issue of bail so it is unclear the statutory basis for this cause of action.

Nevertheless, Article I, section 1 of the California Constitution protects against the misuse of methods of gathering personal data by government and business. *See Hill v. Nat'l Collegiate Athletic Ass'n.*, 7 Cal.4th 1, 21 (1994). Whether particular types of information implicate a legally protected privacy interest "is to be determined from the usual sources of positive law governing the right to privacy," including, among other things, "common law development." *Hill,* 7 Cal.4th at 36. The elements of a common law invasion of privacy claim are intrusion into a private place,

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

449825.2

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

conversation, or matter, in a manner highly offensive to a reasonable person. *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal.App.4th 1228, 1259 (2005). In determining the existence of "offensiveness," one must consider: "(1) the degree of intrusion; (2) the context, conduct and circumstances surrounding the intrusion; (3) the intruder's motives and objectives; (4) the setting into which the intrusion occurs; and (5) the expectations of those whose privacy is invaded." *Sanchez-Scott v. Alza Pharms.* (2001) 86 Cal.App.4th 365, 377.

Lee alleges "from October 26, 2017, up to and including the present, Defendant engaged in and continues to engage in surveillance and 'government snooping' against Plaintiff Lee." (Dkt. No. 1 at ¶ 119.) In support, Plaintiff Lee cites to the same instances of unreasonable search in the Fourth Claim: trespass; falsifying information in order to obtain inspection warrants; seeking inspection warrants without prior notice to plaintiff; exceeding the scope of the warrants; installing cameras outside the gates of the Subject Property; utilization of neighborhood informants; unnecessary inspections; and overhead surveillance of the Subject Property. (Dkt. No. 1 at ¶ 119.) However, these allegations fail to identify any legally protected privacy interest. As discussed, the City's searches were pursuant to valid warrants and/or with consent. The cameras, neighborhood informants, and overhead surveillance do not implicate a reasonable expectation of privacy. Thus, Lee has not alleged sufficient facts to plead her Fourth Claim.

### D.   Plaintiff Lee Fails to Establish Violation of The Unruh Civil Rights Act

The Unruh Act proscribes that: all persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever. (Cal. Civ. Code § 51(a).) A plaintiff must plead and prove *intentional* discrimination in a public accommodation. *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1175 (1991). A plaintiff must offer substantial evidence that the defendant acted with a discriminatory animus, such that a reasonable trier of fact could conclude the defendant engaged in intentional discrimination. *See Hersant v. Dept. of Social Services* 57 Cal.App.4th 997, 1004-1004 (1997).

449825.2

Here, Lee alleges "the acts taken alleged herein by the City with the intent to intimidate, threaten and coerce Ms. Lee to vacate the real property and/or to cease usage of the real property for religious purposes." (Dkt. No. 1 at ¶ 126.)  As such, Lee's violation of the Unruh Act is based on her religious discrimination claim. As noted in Part IV.B.1, above, Lee has failed to establish a *prima facie* showing of religious discrimination. While Lee pleads that "the defendant acted with a discriminatory animus," this conclusory statement fails to show *intentional* discrimination. Thus, Lee has not stated her Sixth Claim for Relief under the Unruh Act.

### E.    Plaintiffs Fail to State Claims Seven through Eleven Based on RLUIPA

Plaintiffs' seventh through eleventh causes of action are brought under RLUIPA, 42 U.S.C. § 2000cc, *et seq*. RLUIPA was enacted "to protect the free exercise of religion guaranteed by the First Amendment from government regulation." *Guru Nanak Sikh Soc. of Yuba County v. County of Sutter*, 456 F.3d 978, 985 (9th Cir. 2006.)

RLUIPA limits government regulation of land use in different ways. First, the statute provides:

> No government shall impose of implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that [the] imposition . . . is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a). A substantial burden must place "more than an inconvenience on religious exercise;" "it must be 'oppressive' to a 'significant great extent'" and "impose a significantly great restriction or onus upon such exercise." *Garu Nanak*, 456 F.3d at 988-89; *see also Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011); *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).

Second, RLUIPA provides, "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). To establish this claim, Plaintiffs must show: (1) there is an imposition or implementation of a land-use regulation, (2) by a government, (3) on a religious assembly or institution, and (4) the land-use regulation treats a religious assembly or institution "on less than equal terms with a nonreligious assembly or

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

CITY'S MOTION TO DISMISS
3:21-CV-04661

449825.2

institution." *Calvary Chapel Bible Fellowship v. Cnty. of Riverside*, 948 F.3d 1172, 1175-76 (9th Cir. 2020); *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1171-72 (9th Cir. 2011). "Analysis should focus on what 'equal' means in the context. Equality is always with respect to a characteristic that may or may not be material." *Centro Familiar*, 651 F.3d at 1172. A court examines whether the religious assembly or institution is "similarly situated as to the regulatory purpose." *Id.*; *see also New Harvest Christian Fellowship v. City of Salinas*, 463 F.Supp.3d 1027, 1042 (N.D. Cal. 2020.) "A city violates the equal term provision only when a church is treated on a less than equal basis with a secular comparator, similarly, situated with respect to an accepted zoning criteria." *Centro Familiar*, 651 F.3d at 1173. Third, RLUIPA provides, "[n]o government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination." 42 U.S.C. § 2000cc(b)(2). Finally, RLUIPA provides, "[n]o government shall impose or implement a land use regulation that totally excludes religious assemblies from a jurisdiction or unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(3).

A "land use regulation" means a "zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest. 42 U.S.C. § 2000cc-5(5). However, building codes are typically not considered "land use regulations." *Anselmo v. Cnty. of Shasta*, 873 F.Supp.2d 1247, 1257-58. RLUIPA does not "guarantee plaintiffs the right to exercise their religion wherever they desire or excuse them from complying with land use regulations. *Id.* at 1962.

### 1.   No RLUIPA Claims Based on FMC 18.55.110

Through their Seventh, Eighth, and Ninth claims, Plaintiffs challenge the constitutionality of FMC 18.55.110 based on RLUIPA's substantial burden, equal terms, and exclusion and limits provisions. These claims appear to be facial challenges because Plaintiffs allege that FMC 18.55.110 "on its face" violates RLUIPA because it "totally excludes religious uses from an open space zoning district." (Dkt. No. 1 at ¶¶ 134, 144, 153, 155.)

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

449825.2

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

This Court can take judicial notice that Plaintiffs' allegations relating to the exclusion of religious uses from the open space district is factually incorrect. FMC 18.55.110 allows for public and quasi-public uses in the open space district in the land use designations of City Park, General, and Hillside. (RJN ¶ 1, Exh. A.) Quasi-public uses encompass secular uses by private, nonprofit educational, recreational, charitable, and/or medical institution as well as religious uses. (RJN ¶ 2, Exh. B.)  The only places where quasi-public uses are entirely prohibited in the open space district are in the land use designations of Hill (beyond Ridgeline), Hill Face, and Private, and this prohibition applies to secular uses as well as religious uses. (RJN ¶ 1, Exh. A at 14.) As such, because Plaintiffs' Seventh, Eight, and Ninth causes of action are based on this inaccurate representation of FMC 18.55.110, this Court should grant this motion to dismiss.

Moreover, Plaintiffs have not pleaded sufficient facts to demonstrate that FMC 18.55.110 substantially burdens the exercise of religion on its face. Here, this Court can judicially notice that FMC 18.55.110 allows religious uses in the open space district within certain land use designations with a conditional use permit. (RJN ¶ 1, Exh. A at 14.) There are no allegations that there are no feasible alternatives within the City. There is no substantial burden when other viable sites in the relevant jurisdiction ultimately exist. *Foursquare*, 673 F.3d at 1068; *San Jose Christian College*, 360 F.3d at 1035; *see also New Harvest Christian Fellowship v. City of Salinas*, 463 F.Supp.3d 1027, 1036-38 (N.D. Cal. 2020). Because the FMC 18.55.110 allows religious use in the open space district, and Plaintiffs have not shown the lack of other sites within the City, Plaintiffs have not sufficiently pleaded the Seventh Claim based on RLUIPA's substantial burden provision.

Additionally, Plaintiffs have not pleaded sufficient facts to demonstrate that FMC 18.55.110 treats a religious institution on less than equal terms on its face. Religious use is included in the definition of "quasi-public use," which also encompasses secular uses by private, nonprofit educational, recreational, charitable, and/or medical institutions. (RJN ¶ 2, Exh. B.) FMC 18.55.110 permits all quasi-public use in the City Park, General, and Hillside land use designations with a conditional use permit while also prohibiting all quasi-public use in the Hill (beyond Ridgeline), Hill Face, and Private Land use designations. (RJN ¶1, Exh. A at 14.) In

CITY'S MOTION TO DISMISS
3:21-CV-04661

449825.2

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

other words, FMC 18.55.110 treats all quasi-public uses on equal terms, regardless of whether the use is by a religious institution or a secular institution. *See Calvary Chapel*, 948 F.3d at 1175-1177. Thus, Plaintiffs have not sufficiently pleaded their Eighth Claim.

Finally, Plaintiffs have pleaded insufficient facts to demonstrate that FMC 18.55.110 excludes or unreasonably limits religious assemblies, institutions, or structures within the City. FMC 18.55.110 allows quasi-public uses, which includes religious uses, in the open space district within certain land use designations with a conditional use permit. (RJN ¶ 1, Exh. A at 14.) In the areas of the open space district where quasi-public uses are prohibited, they are prohibited regardless of whether the use is by a private, nonprofit educational, religious, recreational, charitable, and/or medical institution. (RJN ¶¶ 1-2, Exhs. A-B.) FMC 18.55.110 only regulates use within the open space district; it does not apply to the entire City. As such, on its face, FMC 18.55.110 does not exclude or unreasonably limit religious assemblies, institutions, or structures within the City. Plaintiffs, therefore, have not sufficiently pleaded their Ninth Claim.

### 2. No RLUIPA Claim Based on the Amended Notice and Order to Abate

Plaintiffs claim "[t]he Amended Notice and Order to Abate Nuisance dated March 11, 2021, and the attendant proceedings thereto purports to be an implementation of one or more land use regulations that imposes a substantial burden on the religious exercise of a person, and a religious institution." (Dkt. No. 1 at ¶ 161.) However, this Court can take judicial notice of the fact that this Amended Notice and Order is not a "land use regulation" as defined in RLUIPA.

The Amended Notice and Order is not based solely on a "zoning or landmarking law, or the application of such a law." 42 U.S.C. 2000cc-5(5). While some violations listed refer to the City's open space district codified at FMC Chapter 18.55, it also notes violations of *other* code sections that are not zoning or landmarking laws, such as the California Building Code, California Electrical Code, California Plumbing Code, California Mechanical Code, and California Fire Code, the lack of permits, and the failure to undergo environmental review under the California Environmental Quality Act ("CEQA"). (RJN ¶ 9, Exh. I.) There can be no claim under RLUIPA for violations of codes that make no reference to zoning laws. *Anselmo v. Cnty. of Shasta*, 873 F.Supp.2d 1247, 1257-58. Nor is RLUIPA triggered by CEQA requirements. *San Jose Christian*

449825.2

*College*, 360 F.3d at 1036. As such, Plaintiffs have not stated their Tenth Claim.

### 3.   No RLUIPA Claim Based on the Land Conservation Contract

Plaintiffs allege that the Land Conservation Contract entered into relating to the property "treats a religious institution on less than equal terms with a non-religious institution." (Dkt. No. 1 at ¶ 174.) However, this Court can take judicial notice of the contract to determine it does not.

The Land Conservation Contract was entered into, with the City, by the prior property owner, M.O. and Betty Sabraw on February 17, 1978. (Dkt. No. ¶ 15; RJN ¶ 3, Exh. C at 1.) The contract provides that the property owner and the City "desire to limit the use of said property to agricultural and compatible uses in order to preserve a maximum amount of agricultural land, to maintain the agricultural economy, to secure a food supply for future residents, and to discourage premature and unnecessary conversion of agricultural land to urban uses, recognizing that such land has public value as open space and constitutes an important physical, social, aesthetic, and economic asset to the City." (RJN ¶ 3, Exh. C at 1.) The contract restricts use of the property to agricultural uses and agricultural uses for producing agricultural commodities for commercial purposes and compatible uses. (RJN ¶ 3, Exh. C at 2.) The contract's term was initially for 10 years but renews annually every year for an unlimited number of extensions unless notice of non-renewal is given. (RJN ¶ 3, Exh. C at 2.) The Contract was recorded. (RJN ¶ 3, Exh. C at 1.)

Plaintiffs plead no allegations explaining how the Contract treats religious institutions "on a less than equal basis with a secular comparator." *Centro Familiar*, 651 F.3d at 1173. The allegations pleaded are either conclusory or Plaintiffs' own legal arguments, which this Court can disregard. However, this Court can take judicial notice that the Contract, on its face, applies to any property owner. It equally bars any use other than agricultural use regardless of its secular or religious nature. The Contract itself makes no reference to religion and is neutral. Therefore, Plaintiffs fail to state their Eleventh Claim that the Contract violates RLUIPA.

### F.   Plaintiffs Fail to State Their Twelfth Claim Based on California Constitution Article I, Section 4

Plaintiffs allege that that FMC 18.55.110 violates Article I, section 4 of the California Constitution because it "totally excludes religious uses from an open space zoning district."

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

CITY'S MOTION TO DISMISS
3:21-CV-04661

449825.2

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1  California Constitution Article I, section 4 provides: "Free exercise and enjoyment of religion

2  without discrimination or preference are guaranteed." To determine whether a statute runs afoul

3  the establishment clause, a court considers: "First, the statute must have a secular legislative

4  purpose; second, its principal or primary effect must be one that neither advances nor inhibits

5  religion [citation]; finally, the statute must not foster 'an excessive government entanglement with

6  religion.' [Citation.]" *Foothill Communities Coalition v. Cnty of Orange*, 222 Cal.App.4th 1302,

7  1320 (2014) (citing *Lemon v. Kurtzman* (1971) 403 U.S. 602, 612–613).

8      First, as discussed above, FMC 18.55.110 does not totally exclude religious uses from the

9  open space district. FMC 18.55.110 allows for public and quasi-public uses (including those by

10  religious institutions) in the open space district in the land use designations of City Park, General,

11  and Hillside with a conditional use permit. (RJN ¶ 1, Exh. A at 14.) Moreover, the purpose of the

12  open space district is secular and does not advance or inhibit religion. Specifically, FMC

13  18.55.010 sets forth a secular purpose and makes no mention of religion. (RJN ¶ 1, Exh. A at 1.)

14  Finally, there are no allegations that the creation of the open space district fosters any

15  entanglement between government and religion. *Foothill Communities*, 222 Cal.App.4th at 1320

16  ("A zoning change or issuance of a special use permit does not create an entanglement between

17  government and religion just because the landowner or operator is a religious organization."). As

18  such, Plaintiffs' Twelfth Claim is insufficiently pleaded.

19  **VII.   CONCLUSION**

20      For the foregoing reasons, the City requests Plaintiffs' complaint be dismissed.

21

22  Dated:  July 9, 2021                    ALLEN, GLAESSNER,
                                             HAZELWOOD & WERTH, LLP
23

24                                           By:  */s/ Kimberly Y. Chin*
                                                  KIMBERLY Y. CHIN
25                                                STEVEN D. WERTH
                                                  MARIA NOZZOLINO
26                                                Attorneys for
                                                  CITY OF FREMONT
27

28

449825.2