ANGELA ALIOTO, (SBN 130328)
STEVEN L. ROBINSON, (SBN 116146)
ANGELA MIA VERONESE (SBN 269942)
**LAW OFFICES OF JOSEPH L. ALIOTO**
**AND ANGELA ALIOTO**
700 Montgomery Street
San Francisco, CA 94111
Telephone: (415) 434-8700
Facsimile: (415) 438-4638
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEMPLE OF 1001 BUDDHAS, MIAOLAN LEE , | CASE NO. No. 3;21-cv-04661 |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - FRCP 12(b)(6** |
| v | Hon Charles Breyer |
| CITY OF FREMONT , | Date: October 1, 2021 |
| Defendant. | Time: 10:00 a.m. Courtroom 6 |

-

# TABLE OF CONTENTS

Page

Index of Authorities ............................................................................................. iii

1. Introduction .................................................................................................. 1

2. Standard for F.R.C.P. 12(b)(6)
   Motions ........................................................................................................ 1

3. The Complaint ............................................................................................. 2

4. Statement of Facts ....................................................................................... 2

   A. The Property ........................................................................................ 2

   B. The Neighboring Property .................................................................. 4

   C. A Place for Prayer .............................................................................. 4

   D. City Inspectors Enter the
      Property Without Permission ............................................................. 4

   E. The First Inspection Warrant .............................................................. 5

   F. A License Plate Reader is Placed
      at the Property Entrance ..................................................................... 6

   G. "You Can NOT Have a
      Place of Worship Here" ...................................................................... 6

   H. The Second Inspection Warrant ......................................................... 6

   i. The City "Red Tags" Three
      Religious Structures ........................................................................... 7

   j. "Disarm Your Lawyers!" .................................................................... 8

   K. City Officials ask Ms. Lee; "Do You Think
      Buddha Is Ok With  What Your Are Doing?" ..................................... 9

   L. Deadlock ............................................................................................. 10

   M. City Issues an  Amended Notice
      and Order to Abate Nuisance .............................................................. 11

Legal Argument .................................................................................................. 11

5. Plaintiff Has Substantially Complied
   With the State Tort Claim Act as to
   the Fifth and Sixth Causes of Action ........................................................... 11

6.  Compliance with the TCA  Not
    Required for Twelfth Claim ................................................................. 13

7.  Plaintiff Lee States Section
    1983 Discrimination Claims ............................................................... 14

8.  Plaintiff Has Adequately
    Pleaded Retaliation .......................................................................... 16

9.  Plaintiff Has Pleaded Sufficient Facts
    to Show Violation of the Unruh Act ................................................. 19

10. 1laintiff Lee Has Adequately Pleaded
    an Invasion of Privacy Claim ........................................................... 19

11. Plaintiff's Challenge to the Amended
    Notice and Order Is Viable under RLUIPA ....................................... 21

12. Plaintiffs State a Justiciable Dispute over
    the Application of Williamson Act to
    the Property ....................................................................................... 22

13. The Challenged Ordinance on its Face
    Prohibits Buildings Constructed for
    Religious Purposes ............................................................................ 23

14. Plaintiffs State a Viable Declaratory Relief
    Claim under the California Constitution's
    Religious Free Exercise Clause ........................................................ 24

15. Conclusion ......................................................................................... 25

# INDEX OF AUTHORITIES

Page

1. CASES

   A. Federal

Anselmo v. County of Shasta (2012) 87 F. Supp.2d 1247 .......................................... 21, 22

Ashcroft v. Iqbal, (2009) 556 U.S. 662 .................................................................. 1

Beck v. United Food & Commercial Workers
Union Local 99, (9th Cir. 2007) 506 F.3d 874 .................................................... 16

Bell Atl. Corp. v. Twombly, (2007). 550 U.S. 544, 570 ...................................... 1, 2

Blair v. Bethel School Dist., (9th Cir. 2010) 608 F.3d 540 ................................. 16

Cabrera v. Alvarez (N.D. Ca., 2013)  977 F.Supp. 2d 969 .................................. 12

CarePartners LLC v. Lashway, (9th Cir. 2008) 545 F.3d 867 ........................... 17

Cousins v. Lockyer, (9th Cir. 2009) 568 F.3d 1063 ............................................ 1

Furnco Constr. Corp. v. Waters, (1978) 438 U.S. 567 ...................................... 14

Indep. Hous. Servs. v. Fillmore Ctr.
Assocs., (ND Cal, 1983) 840 F. Supp. 1328 ....................................................... 14

In re Cutera Sec. Litig., (9th Cir. 2010) 610 F.3d 1103 ..................................... 1

Lindsay v. Yates (6th Cir. 2007), 498 F.3d 434 .................................................. 14

Mendocino Envtl. Ctr. v. Mendocino
County (9th Cir, 1999) 192 F.3d 1283 ................................................................ 17

Miller v. Fairchild Industries, Inc.,
(9th Cir, 1986) 797 F.2d 727 ............................................................................... 18

Passantino v. Johnson & Johnson Consumer
 Prods., Inc., (9th Cir. 2000) 212 F.3d 493 ........................................................ 18

Peterson v. Hewlett-Packard Co.,
(9th Cir. 2004) 358 F.3d 599 ............................................................................... 15

Rutherford v. La Jolla Riviera Apt. House LLC,
(SD Cal) 2019 U.S. Dist. LEXIS 200618 ........................................................... 19

San Jose Christian College v. City of Morgan
Hill, (9th Cir, 2004)  360 F.3d 1024 ................................................................... 25

Sheppard v. David Evans & Assoc.,
(9th Cir, 2012) 694 F.3d 1045 ............................................................................. 14

**Soranno's Gasco, Inc. v. Morgan,**
(9th Cir. 1989) 874 F.2d 1310 ..................................................................................... 17, 18

**Swierkiewicz v. Sorema N. A.,** (2002)  534 U.S. 506 ..................................................... 14, 15

**Thurston v. ClearPath Lending, Inc.,**
(CD Cal) 2019 U.S. Dist. LEXIS 15015 ............................................................................. 19

**United States v. Wells,** (DC Circuit, 2011)648 F.3d 671 ..................................................... 20

     **B.**    **State**

**Bi-Meat & Provisions Co. v. City of Hawaiian**
 **Redevelopment Agency,** (2007) 156 Cal. App. 4th 1419 ................................................... 13

**City of San Jose v. Superior Court,**
(1974) 12 Cal.3d 447 .................................................................................................. 12

**County of Los Angeles v. Superior**
**Court,** (2008) 159 Cal. App. 4th 353 ............................................................................. 12

**Eureka Teacher's Assn. v. Board of**
**Education** (1988) 202 Cal. App. 3d 469 ........................................................................... 14

**Hill v. National Collegiate Athletic**
**Association** (1994) 7 Cal. 4th 1 ..................................................................................... 19

**Loehr v. Ventura County Community**
**College Dist.,** (1983) 147 Cal. App. 3d 1071 .................................................................. 13

**Minsky v.  Los Angeles** (1974) 11 Cal.3d 113 ....................................................................... 13

**Otis v. City of Los Angeles** (1942) 52 Cal.App.2d 605 ..................................................... 14

**White v. Davis** (1975) 13 Cal.3d 757 ................................................................................... 20

**2.**    **STATUTES**

     **A.**    **Federal**

**28 USCS § 2201** ............................................................................................................. 22

**42 U.S.C. § 1983** .............................................................................................................. 2

**42 U.S.C. § 2000cc** ........................................................................................................ 2, 3

**Federal Rules of Civil Procedure**

    Rule 12(b)(6) ............................................................................................................ 1

**B.    State**

**California Constitution**

    Article I, Section 1 ................................................................................. 2, 13

**California Civil Code**

    § 51 ....................................................................................................... 2

**California Government Code**

    **§ 905** .................................................................................................. 13

    **§ 905.2** ............................................................................................... 13

    § 910 .................................................................................................... 12

    **§ 51243** ....................................................................................... 3, 22, 23

**C.    Local**

**Fremont Municipal Ordinance**

    **Section 18.15.3080** .............................................................................. 25

    **Section 18.55.110** ...................................................................... 13, 24, 25

1    **1.**     <u>**INTRODUCTION**</u>

2         This is a case of religious and national origin/ancestry discrimination in land

3 use.

4         Plaintiff Miaolan Lee simply desires to have a private chapel and place of

5 mediation on her home property.  Defendant Fremont objects.   Its in-house lawyer has

6 bluntly  told Ms. Lee's representative that a "House of worship is not allowed on [Ms.

7 Lee's property]."

8         Ms. Lee has sought redress through the present court action.  Fremont has

9 responded with the present motion to dismiss pursuant to **F.R.C.P. 12(b) ( 6)**, on nine

10 purported grounds.  Plaintiffs oppose the motion in its entirety.

11    **2.**     <u>**STANDARD FOR F.R.C.P. 12(b)(6) MOTIONS**</u>

12         Under **Rule 12(b)(6)**, a party may file a motion to dismiss based on the failure to

13 state a claim upon which relief may be granted. A **Rule 12(b)(6)** motion challenges the

14 sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that

15 is plausible on its face." <u>**Bell Atl. Corp. v. Twombly**</u>, (2007). 550 U.S. 544, 570.

16         When analyzing a complaint for failure to state a claim to relief under **Rule**

17 **12(b)(6),** the well-pled factual allegations are taken as true and construed in the light

18 most favorable to the nonmoving party. <u>**Cousins v. Lockyer**</u>, (9th Cir. 2009) 568 F.3d

19 1063, 1067. Legal conclusions couched as factual allegations are not entitled to the

20 assumption of truth, <u>**Ashcroft v. Iqbal**</u>, (2009) 556 U.S. 662, 680, and therefore are

21 insufficient to defeat a motion to dismiss for failure to state a claim, <u>**In re Cutera Sec.**</u>

22 <u>**Litig.,**</u> (9th Cir. 2010) 610 F.3d 1103, 1108.

23         It bears remembering that the  plausibility standard "is not akin to a 'probability

24 requirement,' but it asks for more than a sheer possibility that a defendant has acted

25 unlawfully." <u>**Iqbal**</u>, 556 U.S. at 678 (quoting <u>**Twombly**</u>, 550 U.S. at 556). The present

26 complaint does not rely on formulaic boilerplate or legal conclusions masquerading as

27 facts. Instead we have a factually dense complaint that more than satisfies the

28

plausibility requirement of **Twombly**.  A categorical statement from the City prohibiting a House of Worship on the property is just one example of the facts alleged in the complaint.

### 3.    THE COMPLAINT

The complaint states twelve claims for relief: 1.Violation of 42 U.S.C. § 1983 - Religious Discrimination - Denial of Free Exercise; 2. Violation of 42 U.S.C. § 1983 - National Origin Discrimination;  3, Violation of 42 U.S.C. § 1983 -Retaliation for opposing Religious National Origin Discrimination;  4.Violation of 42 U.S.C. § 1983 - Unreasonable Search & Seizure; 5. Invasion of Privacy - Government Snooping - Calif Const, Art Article I, §  1; 6 . Arbitrary Discrimination - Race & Religion - Calif. Civ. Code § 51; 7.  Declaratory and Injunctive Relief -  RLUIPA - Substantial Burden- 42 U.S.C. § 2000cc; 8.  Declaratory and Injunctive Relief - Unequal Terms - RLUIPA -  42 U.S.C. § 2000cc; 9. Declaratory and Injunctive Relief - Unlawful Exclusion - RLUIPA - 42 U.S.C. § 2000cc; 10. Declaratory and Injunctive Relief of Abatement Proceedings - RLUIIPA - Substantial Burden -  42 U.S.C. § 2000cc; 11. Declaratory and Injunctive Relief - Conservation Land Contract  - RLUIIPA - Unequal Terms -  42 U.S.C. § 2000cc; and 12. Declaratory and Injunctive Relief - Abridgement of Free Exercise & Enjoyment f Religion - California Const. I § 4.

### 4.    STATEMENT OF FACTS

#### A. The Property

This case concerns the 29 acres of real property known as 6900 Mill Creek Road, Fremont, California.  Complaint ("Comp") Dock No. 1. ¶ 12, P. 2:21-26.

Plaintiff Miaolan Lee purchased the property on October 26, 2010, on behalf of the Miaolan Lee Living Trust.  Comp ¶¶ 13 & 21, P. 2:27, 4:21-23 . Ms. Lee is an individual of Asian national origin and is a master of the Buddhist religion.  Comp ¶ 9, P. 2:9-11.  Her intent in buying the property was to use it as a residence for herself and a religious retreat.  Comp ¶ 21, P. 4:21-23.

Plaintiff Lee deeded ownership of the Real Property to Plaintiff Temple of 1001 Buddhas in March 12, 2018. Comp ¶ 14, p. 2:1-2.[1]

The real property is zoned as "open space." Comp ¶ 18, P. 4:8-10.

On February 17, 1978, a prior owner of the property signed a "Land Conservation Contract" with Defendant City pursuant to the Williamson Act (which is currently codified at **California Government Code § 51223**). The contract states, in pertinent part, "[d]uring the term of this contract, or any renewal thereof, the said property shall not be used for any purpose, other than agricultural uses for producing agricultural commodities for commercial purposes and compatible uses as listed below." Complaint ¶ 15, P. 3: 3-9, The contract lists 13 "compatible uses." As will be seen below, one of the major issues in this case is whether the uses Plaintiff proposes for the property are such "compatible uses." The Land Conservation Contract has been renewed multiple times over the past forty plus years. Comp ¶ 16, P. 3:13-15.

These are the structures currently on the property:

a)   Main Buddha Hall (A structure existing at the time of Plaintiff Lee's acquisition of the real property but was subsequently modified);

b)   Meditation Hall (A structure existing at the time of Plaintiff Lee's acquisition of the real property but was subsequently modified, receiving a permit in 2014);

c)   God House Structure;

d)   Tree House;

e)   Retreat House;

f)   Green House (most Buddhist temples have a green house where they grow their own vegetables);

g)   Horse Run-in shed;

h)   A vacant mobile home at the creek (A structure existing at the time of Plaintiff Lee's acquisition of the real property but which was subsequently

---

[1] Plaintiff Temple is a non profit public benefit corporation. The purpose of the Temple is to facilitate and encourage the observance of the Buddhist religion. Although the Temple is a religious institution (See 42 U.S.C. § 2000cc(a)(1)) it is not a religious assembly.

modified); and

i)    Main house  (A structure existing at the time of Plaintiff Lee's acquisition of the real property). Comp ¶ 17, P. 3:16-4:6.

Items a through f are for religious purposes. Comp ¶ 7, P. 4:7.

**B.  The Neighboring Property**

In early 2012, Plaintiff Lee and her husband met with her next door neighbor, Ron Sabraw, who resides at 6900 Mill Creek Road. Comp ¶ 22, P. 4:24-25.  Sabraw, a Caucasian male, told Plaintiff and her husband that he did not get permits for some of the work done on his property. He said "too much red tape." Comp ¶ 23, P. 5:1-4.  In that meeting, Mr.  Sabraw showed Plaintiff and her husband various instances of work on his property without a permit.  Comp ¶ 32, P. 5:4-5.  Among the things Sabraw showed Plaintiff, was a 1000 foot deck, which is 75 feet from the creek. Comp ¶ 23, P. 5:5-8.

**C.    A Place for Prayer**

In 2013 and 2014, Building Department Chief Chris Gale visited the property. Gale gave Ms. Lee "permission" to use the property as a "place for prayer."  Gale told Plaintiff she would net to get a permit for any improvements to the barn, which was on the site when she bought property.  Comp ¶ 25, P. 5:19-6:3, Accordingly, Ms. Lee applied for and received a permit for modifications to the barn to be used as a "non habitable structure [used] for habitable purposes."  Comp ¶ 26, P. 6:5-6.

**D.    City Inspectors Enter the Property Without Permission**

On October 26, 2017, Leonard Powell, Code Enforcement Manager for the City sent Ms. Lee an e-mail requesting access to the Property. Comp ¶ 27, P.  6:8-9.

The very next day, at 10:00 a.m.,  before Ms. Lee could respond to the e-mail, Powell showed up at the property  with two other city officials.  They drove in through the automatic gate.

Waving off the Plaintiff's maintenance supervisor, Powell and his entourage traveled throughout the property, until they encountered Ms. Lee walking by the creek.

Ms. Lee thereupon demanded that Powell and the others leave.  Before they left, Powell

handed Ms. Lee his City business card, with the letters "J.D." after his name. Plaintiff

later found out from the City that Powell was not a lawyer, Comp ¶¶ 28, 29 & 34. P.

6:10-7:4 & 8:6-10.

### E.    The First Inspection Warrant

On December 28, 2017, Ms. Lee sent Powell an email informing him that his

October 27, 2017, entry onto the property was without her consent and unlawful. Comp

¶ 33. P. 7:19-21.  In the email, Ms. Lee wrote:  "*[Y]ou and your team repeatedly violated my*

*Fourth Amendment, these actions have proven to me that you/ City of Fremont, are using your*

*authority over Asian Religious Woman, harassing and discriminating/ single me out on and off,*

*for the past few years.*"  Comp ¶ 33, P. 7:21-24. Ms. Lee did not receive a response to that

email.

On January 30, 2018, Ms.  Lee met with Gary West, Building Official of the City

of Fremont.  In that meeting, Plaintiff Lee complained that she was being discriminated

against because of her religion and ethnicity.  She also complained of the unauthorized

entry onto her property by City Officials on October 28, 2017. Comp ¶ 34, P. 8:2-6.

Also on January 30, 2018, West told Ms. Lee that he had an "urgent need" to

schedule an appointment.  Comp ¶ 35, P. 8:17-18.  West suggested a date which Ms. Lee

was scheduled to be out of town.  After so advising West, Plaintiff  suggested a date on

which she was available, February 2.  West declined that date, saying he was "not

available" then. Comp ¶ 35, P. 8:17-21.

Instead of further negotiating an appointment for the inspection, the City,

without notice to Ms. Lee, went to Superior Court and got an inspection warrant issued

for February 9, 2018,  a date when the City thought Ms. Lee was not going to be

physically present.  Comp ¶ 36, P. 8:22-26.

When the City executed the warrant, it turned out that Ms. Lee was present due

to a change in plans.  Five city officials (Building Department Chief Gary West, Code

1    Enforcement Manager Leonard Powell, Code Enforcement Officer Tanu Jagtap,

2    Building Inspector Randy Bohnenstiehl, Environmental Specialist Val Blakely), five

3    police officers in tactical riot gear (with a K9 unit) and a locksmith. Ms. Lee opened the

4    goat so that it would not be broken down.  The entire property was searched.  City

5    personnel went into the residence of Plaintiff Lee, searching every room - including

6    Plaintiff Lee's bedroom- and opened most closets in the residence.  They rummaged

7    through everything including her food in the kitchen, taking photos of the food. They

8    even inspected Plaintiff Lee's makeup. City personnel were present on the real property

9    for about three hours.   Comp ¶38, P. 9:12-23.

10         **F.**     <u>A License Plate Reader is Placed at the Property Entrance</u>

11       From February 28, 2018, through March 9, 2018, the City placed a license plate

12    reader and recording camera at the entry gate for the property, so as to record who was

13    entering and leaving the property. Plaintiff's husband pointed cameras on the City's

14    cameras.  Footage from Plaintiffs' cameras showed City police personnel taking down

15    the license plate reader and recording camera on March 9, 2018.  Comp ¶ 39, P. 10:3-13.

16         **G.**     <u>"You Can NOT Have a Place of Worship Here"</u>

17       On March 29, 2018, the City issued a "Notice and Order to Abate Nuisance" with

18    regard to three structures: 1) main  Buddha Hall; 2) the retreat house;  and 3) the

19    Meditation Hall. The notice instructed Plaintiffs to immediately  "immediately cease

20    habitation and occupancy[]" of the three structures, even though no one was living in

21    the structures.  Comp ¶ 40, P. 10:14-21.

22       Plaintiffs promptly appealed the notice.  On May 18, 2018, Bronwen Lacey, City

23    Attorney of Defendant told Plaintiff's lawyer that the Notice to Abate would remain in

24    effect due to the Williamson Act Contract.  Lacey claimed that given the contract, a

25    "House of Worship is not allowed [on the real property]."  Comp ¶ ¶ 41 & 42, P. 10:22-

26    27.

27         **H.**     <u>The Second Inspection Warrant</u>

28

On May 21, Plaintiff Lee, with her retained engineer, architect and attorney met with City staff to attempt to address the Defendant's concerns underlying the notice to abate. In that meeting, Ms. Lee not only agreed to allow City Staff to inspect the property but even agreed with city staff present as to a date and time. (May 25 at 9 a.m.) Comp ¶ 25. P. 11: 2-6. Shortly thereafter Code Enforcement Officer Jagtap unilaterally cancelled the appointment by an email claiming a "scheduling conflict." Comp ¶ 43, P. 11:6-8.

The City then sought an inspection warrant with the Superior Court. In the application for the warrant, Jagtap claimed, falsely, that there was no consent from the property owner for the search and omitted the fact that Plaintiff had agreed with the City on a time for the inspection but that the City had cancelled unilaterally. Again, Plaintiffs were not given notice of the application for the warrant. Comp ¶ ¶ 43 & 44, P. 11:8-.21.

The City executed the second warrant on May 24 at 8:00 a.m. City Code Enforcement Officials showed up with a police officer and a firefighter. The Code Enforcement Officials wandered the entire property and entered structures. Ms. Lee was awakened from her sleep at the beginning of the inspection. Lee asked Code Enforcement Official Powell for a copy of the warrant, but was refused. The search lasted two hours. Comp ¶ 45, P.11:23-12:7.

i.    **The City "Red Tags" Three Religious Structures**

On June 13, 2018, Plaintiffs' lawyer sent a letter to the Mayor and City Council of Fremont asserting that the property was being used as "a private Hindu-Buddhist temple/house of worship." Comp ¶ 45, P. 12:8-14.

The very next day, on June 14, Gary West, Chief Building Official, issued a notice and order to vacate three buildings on the Real Property on the grounds the buildings were "unlawful, unsafe and unfit for human occupancy." The Plaintiffs were ordered to remove all personal property from the structures by July 28, 2018. Comp ¶ 47, P. 12:15-

22.

On June 26, 2018, City Officials requested and obtained entry to the Real Property. The officials then "red tagged" (i.e., posted notices barring entry) to the three condemned buildings and on the main entrance to the Real Property itself, even though the Real Property itself had not been condemned. The Plaintiff's home and trailer house on the property that were not red tagged, but the City of Fremont nevertheless red tagged the whole property. Comp ¶ 50, P. 13:9-14. Since June 26, 2018, the Plaintiffs have not been able to use the three buildings for their intended purposes, which is for mediation and to practice their faith. Comp ¶ 51, P. 13:15-17.

### j.    "Disarm Your Lawyers!"

On August 30, 2018, Fremont City Council member Raj Salwan told Ms. Lee that if she wanted to get the status of the three religious structures properly permitted she must "disarm [her] lawyers" as they were "costing the City too many resources." If she would do that, "we could work this out." Ms. Lee complied and got rid of her lawyers. Comp ¶ 54, P. 13:25-14:4.

Ms. Lee then hired another team of consultants to attempt to get the buildings permitted. Comp ¶ 55, P. 14:10-12. This second consultant team met with City personnel numerous times, as described in the complaint, receiving instructions and complying from September 17, 2018, to April 14, 2009. Comp ¶ ¶ 55, 56,, 57 & 58. P, 14:5-25.

On May 3, 2019, without notice to the Plaintiffs, Defendant City recorded a Notice of Substandard Building/Structure with the County Recorder's Office of the County of Alameda over the signature of Building Official Gary West, bearing the date of April 9, 2019, but it was not mentioned in the April 24, 2019, meeting between City officials and the Plaintiffs' consultants.   In fact, the City never told Plaintiffs about this notice. They only found out about it in May 2021. The filing of the Notice of Substandard Building etc put a cloud on th e title of the property. Comp ¶59 P. 14:26-

15:5.

On June 4, 2019, Ms. Lee sent a letter to City Council member Raj Salwan complaining about discriminatory code enforcement, about the inspection warrants. In the letter, Ms. Lee described this treatment as discrimination based on religion and race. Salwan said he conveyed the letter to the City attorney, who responded "the City is ready for a lawsuit." Comp ¶ 60, P. 15:6-13.

On September 25, 2019, Code Enforcement Officer jag tap, issued two citations regarding the Property, each with separate case numbers. One was directed toward Plaintiff and the other directed toward the Plaintiff's bookkeeper. Aside from the recipients of the citations, they were identical and each imposed fines of $ 21,500, totaling $43,000. In 30 days, the amount doubled was $ 86,000. Comp ¶ 61, P. 15:14-20.

On October 7, 2019, Plaintiffs submitted an application for necessary permits for the Real Property. At the same time, they  paid the City Planning Department $ 27,250 in fees for the applications to get conditional use permits for the structures that the City Claimed had no permits. The regular price is $7,250.00 but the City planner, James Willis insisted that Plaintiff pay an additional $20,000 fee for design review. According to Plaintiffs' Consultant, Arun Shah, the practice of the City is ordinarily not to charge such fees at the outset of the process. Defendant City cashed the check but has never accounted to Plaintiffs on how the money was spent. Comp ¶ 63, P. 15:27-16:8.

### K.   City Officials ask Ms. Lee; "Do You Think Buddha Is Ok With  What Your Are Doing?"

On December 12, 2019, Ms. Lee met with Wayne Morris, Deputy Community Director to discuss the double citations. They were joined by Leonard Powell at the request of Morris. In that meeting, Ms. Lee asked why she was issued the double citations. Neither Morris nor Powell answered Ms. Lee's questions. Instead, Morris and Powell both insisted that Ms. Lee was using religion as a protective  shield. Morris said: "You are using the Buddha as a protective shield"; and "Do you think Buddha is ok with this construction?" Laughing, Morris stated, "Do you think Buddha is ok with

what you are doing?"  and "This (the permit process) is going to be so expensive for you that you are just going to give up and demolish." While Mr. Shah, Plaintiff's consultant, was working with Mr. Morris, Mr. Morris made it very clear that; "things (buildings) need to come out."

### L.    Deadlock

In March 2020, Defendant City withdrew, without explanation, the double citations issued on September 25, 2019.  Comp ¶ 69, P. 17:18-20.

On October 29, 2020, Plaintiffs submitted a modified application for permits and requested responses for their suggested mitigation measures, Complaint, ¶ 71, P. 17:23-24.  Right days later, the City rejected, again, the application for being "incomplete."  In the rejection, City staff did not respond to Plaintiffs' proposed mitigation measures. Comp ¶ 72, P. 17:25-18:2.

The parties were deadlocked, with the City refusing to approve Plaintiffs' application for permits and not responding to the Plaintiffs' proposed mitigation measures. It appears that the City was seeking nothing less than the removal of the structures.

### M.    City Issues an  Amended Notice and Order to Abate Nuisance

On December 17, 2020,  Ms. Lee sent Tamu Jagtap an email; pointing out the falsification in the application for the second inspection warrant which was under penalty of perjury, that Jagtap had disputed the use of the property for religious purposes, notwithstanding the obvious presence of Buddhist oriented statues, and the religious shrines.  Plaintiff Lee also pointed out that Jagtap had provided false information in the application for the second inspection warrant by intentionally omitting the fact that appointments were scheduled, thereby fabricating the "non consent" requirement of the inspection search warrant.  Comp ¶ 74, P. 18:11-19.

Less than three months later, the City issued an Amended Notice and Order to Abate Nuisance, notwithstanding the attempts by Plaintiffs to comply with the City's

permitting requirements. The notice called for demolition of the buildings constructed on the property, specifically the  Buddha Hall (Temple), the Retreat House (Temple), the God House (Hindu Temple), and the Tree house (meditation Temple). Comp ¶ 75, P. 18:22-19:1.

## LEGAL ARGUMENT

**5.   PLAINTIFF HAS SUBSTANTIALLY COMPLIED
WITH THE STATE TORT CLAIM ACT AS TO
THE FIFTH AND SIXTH CAUSES OF ACTION**

Defendant City argues that the Plaintiffs fifth, sixth and twelfth claims are precluded because of a failure to comply the California Tort Claim Act.   This section will address the City's argument as to the fifth and sixth claims.  In a separate section they will address the twelfth claim, for declaratory relief.

The Plaintiffs are relying on the amended tort claim, filed on May 18, 2021.  See Defendant's Request for Judicial Notice, Exhibit N.

An individual[2] filing a claim under the TCA must include the following:

(a) The name and post office address of the claimant.

(b) The post office address to which the person presenting the claim desires notices to be sent.

(c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.

(d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.

(e) The name or names of the public employee or employees causing the injury, damage, or loss, if known.

(f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the

---

[2]Defendant City apparently contends that the tort claim is insufficient as to Plaintiff Temple as to the Fifth and Sixth Claims for Relief.  However, a reading of the complaint shows that Plaintiff Temple does not join in those particular claims.

claim would be a limited civil case. **Cal. Gov' Code § 910.**

"[A] claim under **Government Code section 910** is sufficient if (1) there is 'some compliance with all of the statutory requirements'; and (2) the claim discloses  sufficient information to enable the public entity adequately to investigate the merits of the claim so as to settle the claim, if appropriate." **County of Los Angeles v. Superior Court,** (2008) 159 Cal. App. 4th 353, 360 (citing **City of San Jose v. Superior Court,** (1974) 12 Cal.3d 447, 456-57).

Although the form utilized by the City of Fremont does not track the subdivisions of Government Code Section 910 precisely, a  reading of the amended tort claim of May 18, 2021, shows compliance with (a) (b) and ( f  ) on its face.  It also shows the place of the deprivation (6800 Mill Creek Road, Fremont, Ca 94539) and it alleges the dates of the harm, which is continuing ("October 2017 up to the present, up to today May 18, 2021").  The Amended Tort Claim also describes the damages "Loss of use of real property and structures on real property.  Damage to Reputation, Emotional Distress."

As to "the circumstances of the occurrence or transaction" the amended form states: "The City of Fremont has interfered with and/or prevented the practice of my religion by Code Enforcement, Planning and Building Depts.  Precluded my association with others of my faith, invasion of privacy, Religious and National Origin Discrimination."  This compares favorably with language found sufficient in  **Cabrera v. Alvarez** (N.D. Ca., 2013)  977 F.Supp. 2d 969, 980 (finding sufficient statement in claim "discrimination based on race and national origin, also due to my status as an LED person" and "emotional stress, physical health affected by habitability problems, physical problems in my unit that have never been fixed.")

Although the Amended Tort Claim form does not ask for the names of the public employees responsible for the harm (in deviation from the provisions of **Government Code Section  910**), the Plaintiff identifies the Code Enforcement, Planning & Building

1   Departments as responsible for the harm.

2         It bears remembering that "[i]n general, claim requirements should not be

3   applied rigidly or to "snare the unwary."  Rather, to gauge the sufficiency  of a

4   particular claim, the court looks at (1) whether there is some compliance with all of the

5   statutory requirements; and (2) if so, whether such compliance is   sufficient to

6   constitute substantial compliance." **Bi-Meat & Provisions Co. v. City of Hawaiian**

7   **Redevelopment Agency,** (2007) 156 Cal. App. 4th 1419, 1427-28.

8         As seen in Exhibit n, the Plaintiff has fully completed the tort claim utilized by

9   the City and has provided substantially all the information required by the tort claim

10  statute, bearing in mind that the form utilized by Defendant does not specifically ask for

11  the information required by the Tort Claim statute, such as name of the employees.

12  Even so, the Plaintiff has provided the information required of her.

13  **6.      COMPLIANCE WITH THE TCA NOT**
    **REQUIRED FOR TWELFTH CLAIM**

14

15        The Plaintiffs twelfth claim for seeks declaratory relief for rights established by

16  the California Constitution. It seeks a declaration from the Court that application of the

17  City's **Municipal Ordinance Section 18.55.110** abridges the Plaintiffs right to free

18  exercise and enjoyment of their religion as protected by Article I, Section 1 of the

19  California Constitution.   Comp ¶ ¶ 181 -184, P.  31:27-38:24.

20        "By its own terms, the filing requirements of the [Tort Claim] statute extend only

21  to actions for "money or damages." (citing **Gov. Code, §§ 905, 905.2**) Although this term

22  is not defined in the act, it is comprehensive in scope and includes tort claims arising

23  out of negligence, nuisance, breach of statutory duties, and intentional wrongs." **Loehr**

24  **v. Ventura County Community College Dist.,** (1983) 147 Cal. App. 3d 1071,  1079.

25        The California Supreme Court case of **Minsky v.  Los Angeles** (1974) 11 Cal.3d

26  113, 120-121, described the history of the California Tort Claim statute.  Quoting a

27  treatise, the Court observed that "[Only] claimants seeking money or damages, as

28  distinguished from other types of judicial relief, are required to conform to the claims

procedure." The claims statutes do not "impose any . . . requirements for nonpecuniary actions, such as those seeking injunctive, specific, or declaratory  relief." Id at 121. See **Otis v. City of Los Angeles** (1942) 52 Cal.App.2d 605, 612.

The fact that the Plaintiffs' twelfth claim for relief also seeks monetary compensation as an incident to their claim for declaratory and injunctive relief does not in way change the exemption of this particular claim from the Tort Claim statutes. **Eureka Teacher's Assn. v. Board of Education** (1988) 202 Cal. App. 3d 469, 475. Accord **Indep. Hous. Servs. v. Fillmore Ctr. Assocs.,** (ND Cal, 1983)  840 F. Supp. 1328, 1357-1358.

7.  **PLAINTIFF LEE STATES SECTION
    1983 DISCRIMINATION CLAIMS**

Defendant City attacks Plaintiffs' religious discrimination claims on the grounds that they do not allege a "prima facie" case.  Motion to Dismiss MPAs P, 11:25-27.

However, Plaintiffs are not *required* to state a prima facie case at the pleading stage. **Swierkiewicz v. Sorema N. A.,** (2002)  534 U.S. 506, 515. "The prima facie case ... is an evidentiary standard, not a pleading requirement." Id at 510. In the context of an employment discrimination case under Title VII, the United States Supreme Court observed "that the precise requirements of a prima facie case can vary depending on the context and were "never intended to be rigid, mechanized, or ritualistic."[Citing and quoting **Furnco Constr. Corp. v. Waters**, (1978) 438 U.S. 567, 577]." Id at 512. **Swierkiewiz** remains good law in the Ninth Circuit. **Sheppard v. David Evans & Assoc.,** (9th Cir, 2012) 694 F.3d 1045,   1050. Fn 2.  The **Swierkiewicz** rule extends to discrimination claims other than employment.  **Lindsay v. Yates** (6th Cir. 2007), 498 F.3d 434, 439-40.

The complaint does allege facts showing disparate treatment.  It describes how there are multiple instances of unpermitted work on 6900 Mill Creek Road an adjoining property (a garage 75 feet from the Creek, an elevated deck 75 feet from the creek, a cottage and an olive orchard) without permits, as admitted to Plaintiff Lee by the

1  property owner. Comp. ¶¶ 22, 23 & 24,  P. 4:24-5o18 ¶ 68, P. 17:8-14.  Plaintiff was told

2  by representatives of Defendant City that nothing could be built within 200 feet of the

3  creek.  Comp ¶ 23, P. 5-8.  The City was aware of the unpermitted structures next door

4  to the Plaintiffs' property because Ms. Lee told City representatives about them on of

5  this on at least three separate occasions.  Comp ¶ 68. P. 17: 8-14. The neighboring

6  property remains in use to the current day and has not, as far as Plaintiffs are aware,

7  been "red tagged."  Comp ¶ 17, P. 14-17.

8         As documented in the complaint, officials know full well that the intended use

9  for the Plaintiffs unpremitted building is for religious purposes.  One passage of the

10 complaint references two City officials (Wayne Morris and Leonard Powell apparently

11 mocking Plaintiff Lee's religious beliefs. Comp ¶ 66, P. 16:16-17:2.  (E.g., "Do you think

12 Buddha is ok with this construction.").

13        These facts are sufficient to state a plausible discrimination claim for pleading

14 purposes.  It should be remembered that before discovery is completed, "[I]t may be

15 difficult to define the precise formulation of the required prima facie case in a particular

16 case.  Given that the prima facie case operates as a flexible evidentiary standard, it

17 should not be transposed into a rigid pleading standard for discrimination cases."

18 **Swierkiewicz,** supra,   534 U.S. at 512. The Plaintiffs fully anticipated that discovery

19 may "unearth[] relevant facts and evidence." Id.  However, for present purposes the

20 Plaintiffs have alleged sufficient facts for pleading purposes.

21        The City of Fremont also seeks dismissal of the discrimination clams because, it

22 contends, the Plaintiffs have pleaded insufficient allegations as to the existence of

23 someone "similarly situated" to them. However, any requirement that Plaintiffs show

24 they were treated more poorly than others similarly situated is part of the prima facie

25 showing required in their discrimination claims [See **Peterson v. Hewlett-Packard Co.,**

26 (9th Cir. 2004)  358 F.3d 599, 603 [Fourth element of a prima facie case}. and is thus a

27 matter of proof, rather than pleading, Furthermore, whether two individuals are

28

1   "similarly situated" is "ordinarily a question of fact." " **Beck v. United Food &**
2   **Commercial Workers Union Local 99**, (9th Cir. 2007) 506 F.3d 874, 885 n.5.

3     In any event, the facts already alleged show there to be a plausible comparator to
4   Plaintiffs, which is the next door neighbor Ron Sabraw.  His property, like that of the
5   Plaintiffs, is near to the creek.  Like Plaintiff, he has built several structures on his
6   property.  Unlike the Plaintiffs, the City has taken no action to demolish or otherwise
7   stop Sabraw from using the structures.  While the Plaintiffs are openly religious, Mr.
8   Sabraw does not appear to be using his property for religious structures.

9     Lee anticipates that in the course of discovery she will obtain evidence that will
10  further support her contention that Sabraw is similarly situated to her.  Moreover, there
11  is the likelihood that discovery will show the existence of other similarly situated
12  entities.

13    Finally, in its moving papers the City argues that the Plaintiff has not pleaded
14  any facts showing discrimination on the basis of race/ethnicity.  However, as shown
15  above she has pleaded facts showing a Caucasian neighbor getting more favorable
16  treatment than her.  For pleading purposes, that suffices to show a plausible claim of
17  discrimination.

18  **8.**  **PLAINTIFF HAS ADEQUATELY PLEADED RETALIATION**

19    "The First Amendment forbids government officials from retaliating against
20  individuals for speaking out." **Blair v. Bethel School Dist.**, (9th Cir. 2010) 608 F.3d 540,
21  543, To establish a claim of government retaliation against a plaintiff's exercise of his
22  free speech rights, a plaintiff must show that "(1) he engaged in constitutionally
23  protected activity; (2) as a result, he was subjected to adverse action by the defendant
24  that would chill a person of ordinary firmness from continuing to engage in the
25  protected activity; and (3) there  was a substantial causal relationship between the
26  constitutionally protected activity and the adverse action." Id.

27    In this case, the Plaintiffs allege facts that are more than sufficient to state a

28

plausible claim for retaliation.

First, the Plaintiffs engaged in repeated activity protected by the First Amendment. See Comp ¶ 33, P. 7:19-24 (email to Leonard Powell); Comp ¶ 34, P. 8:2-6 (conversation with Gary West); Comp ¶ 46, P. 12:8-13 (letter to Mayor and City Council); Comp ¶ 60, P, 15:6-9 (Plaintiff Lee's complaint to City Council member).; and Comp ¶ 74, P. 18:11-21 (Plaintiffs complaint to Tamu Jagtap).

These acts constitute protected speech, as Plaintiffs have the right to petition the government for a redress of grievances.  "[i]t is clear that '[s]tate action designed to retaliate against and chill political expression strikes at the heart of the First Amendment.'" **Soranno's Gasco, Inc. v. Morgan**,  (9th Cir. 1989) 874 F.2d 1310, 1314, See also **CarePartners LLC v. Lashway,**  (9th Cir. 2008) 545 F.3d 867, 876-77(holding that the right to petition the government for redress of grievances is a protected First Amendment right).

"In order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that "by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct."[Citations omitted]." **Mendocino Envtl. Ctr. v. Mendocino County** (9th Cir, 1999) 192 F.3d 1283, 1300.  The Ninth Circuit observed that "it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity[.]"   Accordingly, it concluded that "the proper inquiry asks "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Id.

Plaintiffs allege Defendant City took  the following adverse actions in response to the Plaintiffs' protected activity: Comp ¶ ¶ 35, 36 & 38 P. 8:17-26  9:12-10:2 (First inspection warrant and resulting search); Comp ¶ 39, P. 10:3-6.(installing license plate reader); Comp ¶ 40, P. 10:14-21 (March 29, 2018, Notice and Order to Abate Nuisance);

¶ ¶ 44 & 45, P. 11:17-12:7 (Execution of second inspection warrant); Comp ¶ 47, P. 12:15-22 9 June 14, 2018, the City issued a Notice and Order to Vacate); Comp ¶¶ 50 & 51, P. 13:9-17 (red tagging three buildings); Comp ¶ 59, P. 14:26-15:1 (recording notice with County Recorder); Comp ¶ 61, P. 15:14-20 (Issuance of the two citations); and Comp ¶ 75, P. 18:22-19:1 (Amended Notice and Order to Abate Nuisance )

Intrusive searches, fines of many thousands of dollars, "red tagging" of buildings and orders abating nuisances considered separately or collectively have the potential of to "chill or silence a person of ordinary firmness from future First Amendment activities."

Plaintiffs allege plausible causation by proximity in timing between the protected activity and the adverse action. **Passantino v. Johnson & Johnson Consumer Prods., Inc.,** (9th Cir. 2000) 212 F.3d 493, 507 (noting that causation can be inferred from timing alone)See **Soranno's Gasco, Inc. v. Morgan**, supra, 874 F.2d at 1316. **Miller v. Fairchild Industries, Inc.,** (9th Cir, 1986) 797 F.2d 727, 731.

Here, there are multiple instances of close timing between protected activity and adverse action.   The two most recent of adverse action are sufficiently close to support an infer

First, there is the issuance of the March 11, 2021, Amended Notice and Order to Abate Nuisance (Comp ¶ 75) occurred less than three months after Plaintiff Lee's December 17, 2020, email to the City complaining about falsification by a City employee in the application for the second inspection warrant.  Comp ¶ 74, P. 18:11-21.

Second, there is the issuance of two citations on September 25, 2019, seeking to impose total fines of $ 43,000, that would be doubled within 30 days.  Comp ¶ 61, P. 15:14-20.  The issuance of those citations followed a June 3, 2019, letter by Plaintiff to City Council Member Raj Salwan complaining that the City's Code Enforcement Activity was based upon religious and racially discriminatory animus. Comp ¶ 60, P, 15:6-9.  The adverse action occurred less than four months after the protected activity.

**9.  PLAINTIFF HAS PLEADED SUFFICIENT FACTS
       TO SHOW VIOLATION OF THE UNRUH ACT**

Defendant City contends Ms. Lee does not state facts sufficient to constitute "intentional discrimination for purposes of the Unruh Act.

"The ultimate question of whether Defendant, in fact, intentionally discriminated against Plaintiff will be fleshed out later in the case, through discovery and trial." **Thurston v. ClearPath Lending, Inc.,** (CD Cal) 2019 U.S. Dist. LEXIS 15015  *3. The words "intentional," "willful," or need not appear in the Complaint need not appear in the Complaint . For instance, in a case of disability discrimination, it was sufficient to that Defendant had a policy and practice of maintaining an inaccessible website. **Rutherford v. La Jolla Riviera Apt. House LLC**, (SD Cal) 2019 U.S. Dist. LEXIS 200618 *15.

As noted with regard to the Section 1983 claims for discrimination, Plaintiff Lee is not required to plead evidentiary facts showing discrimination.  What she has pleaded is the disparate treatment of her property in comparison to that of her next door naighbor, the statement by the City Attorney that "Houses of Worship" are not allowed on the property and the religious based mockery of Lee by two City officials. This is sufficient for the pleadings stage,

**10.  PLAINTIFF LEE HAS ADEQUATELY PLEADED
        AN INVASION OF PRIVACY CLAIM**

The California Right of Privacy includes the right of  informational privacy. ""This is the value that is threatened by "government snooping and data collecting"; the "compil[ing]" of "extensive sets of dossiers of American citizens" by "[g]overnment agencies."" **Hill v. National Collegiate Athletic Association** (1994)   7 Cal. 4th 1, 81-82. There is also an autonomy interest protecting individuals from interference with personal decisions and relationships. Id at 82.   There is a third, viz., a protectable interest against an intruding party's very act of invading the solitude of the party intruded upon--"privacy" properly so called." Id.  This value "is [also] threatened by

1    "snooping," the "monitoring" of personal conduct, and the "collecting" and "gather[ing]"

2    of personal information." Id.

3         Here, Ms. Lee asserts that her privacy has been intruded upon by the City of

4    Fremont in the following ways: (1) The unauthorized entry onto the property by City

5    Official Leonard Powell (Comp ¶¶ 28, 29), P. 6:10-27); (2) Two overly instrusive

6    inspection warrants, issued under false representations (Comp ¶ ¶ 35, 36, 37. 38, 43 &

7    44, P. 8:17-10:2, 11:2-22); (3) Placing of license plate readers at the gate of the real

8    property. ¶ 39, P. 10:3-13). (4) Use of overhead surveillance drones (Comp ¶ 111, P.

9    25:17-18); and (5) The use of neighborhood informants, such as Sabraw, to monitor the

10   activities of  Plaintiff Lee Comp ¶ ¶ 70  & 111   P. 17:21-22 25:15-16.

11        The Defendant argues that the license plate readers did not violate Ms. Lee's

12   right to privacy.  However, a homeowner or occupant does have a privacy interest in

13   the exposed areas of their yard. **United States v. Wells**, (DC Circuit, 2011)648 F.3d 671,

14   676-678 (Fourth Amendment case holding reasonable expectation of privacy in the

15   visible portion of the home's curtilage).  Under California privacy rights doctrine, the

16   monitoring of visitors entering and leaving the real property smacks of the type of

17   government snooping precluded by the California Constitution. **White v. Davis** (1975)

18   13 Cal.3d 757, 774..

19        There is also the use by the City of neighborhood informants. The White case

20   recognized the use of undercover police informants in a college class room implicated

21   privacy rights. Id at 775-776.  The judicially noticeable matter submitted by the

22   Defendant in support of its motion shows heavy reliance by the City on such

23   neighborhood informants.  Plainly, if one has a privacy interest in the curtilege of one's

24   home, the act of neighbors watching your activities with binoculars is on its face

25   invasive.  The City may protest that such snooping is the acts of third party citizens and

26   does not implicate it. Such a contention is mistaken, as the California Right of Privacy is

27   concerned not merely with the collection of personal private information but its

28

1   retention. Id at 775.

2   Ms. Lee recognizes that the City claims the Statute of Limitations bars this claim.

3   However, the Complaint alleges that a neighbor was witnessed snooping at Ms. Lee

4   and her activities in April 2020.  Comp ¶ 70, P. 17:21-22.   In the event the Court grants

5   the motion to dismiss this cause of action, the Plaintiff is prepared to amend the

6   complaint to show additional acts of surveillance by her neighbors.

7   **11.   PLAINTIFF'S CHALLENGE TO THE AMENDED
        NOTICE AND ORDER IS VIABLE UNDER RLUIPA**

8   The City contends that Plaintiff's tenth claim for relief (Violation of RLUIPA -

9   Abatement Proceedings)  fails to state a claim because the Amended Notice and Order

10  to Abate Nuisance dated March 11, 2020 lists alleged "violations of *other* code violations

11  that are not zoning or landmarking laws, such as the California Building Code,

12  California Electrical Code, California Plumbing Code, California Mechanical Code and

13  California Fire Code, the lack of permits, and the failure to undergo environmental

14  review under the California Environmental Quality Act."  Motion to Dismiss MPAs, P.

15  23:21-26.

16  The City admits, as it must, that the Amended Notice and Order to Abate

17  Nuisance does refer to "some violations listed refer to the City's open space district

18  codified at FMC Chapter 18.55." Motion to Dismiss MPAs P. 23:21-22.

19  However, City seems to argue that because other code sections are cited, there

20  can be no RLUIPA violation.   "There can be no claim under RLUIPA for violation of

21  codes that make no reference to zoning laws. [citing] **Anselmo v. County of Shasta**

22  (2012) 87 F. Supp.2d 1247, 1257-1258]." That statement is true, so far is goes. However,

23  **Anselmo** allowed its plaintiff to proceed because there were alleged violations that

24  referenced zoning laws and the Williamson Act. Id at 1258.  Plaintiffs here, as in

25  **Anselmo**, also allege claims pertaining to both zoning laws and the Williamson Act,

26  under **Anselmo**, the motion to dismiss should be denied.

27  The **Anselmo** case is much like our own.  The County Government sought to

28

Temple of Buddhas et al v. City of Fremont, Case No. 3;21-cv-04661
Plaintiffs' Memorandum in Opposition to Motion to Dismiss

prevent the plaintiff there from utilizing a private chapel on his own land, citing the violation of a Williamson Act contract.  The County started abatement proceedings alleging a battery of violations, some pertaining to violation of land use codes but of other codes and regulations as well. In ruling on a motion to dismiss the court held that what "is in fact a substantial burden under RLUIPA is a question of fact to be resolved at a later point in the proceedings." Id at 1159.

Whether or not a substantial burden is imposed on the Plaintiffs' free exercise is a matter to be decided later in these proceedings, not at the pleadings stage.  Before that question can be resolved, the Defendant will have to show the burden it imposes on Plaintiffs' religious exercise is in furtherance of "a compelling governmental interest and the least restrictive means" of furthering such interest. **Anselmo**, supra, 87 F. Supp.2d at 1259.  That showing, of course, is not made in the present pleading motion.

## 12.  PLAINTIFFS STATE A JUSTICIABLE DISPUTE OVER THE APPLICATION OF WILLIAMSON ACT TO THE PROPERTY

Defendants' attack on the Plaintiffs' eleventh claim for relief is puzzling.

`       That particular claim is an action for declaratory relief pursuant to **28 USC § 2201** in which the Plaintiffs seek a judicial declaration as to their rights and obligations under a land conservation contract entitled pursuant to California's Williamson Act (**Cal Gov Code § 51243**).

The City contends that the court should grant its motion to dismiss as to this cause of action because the contract "equally bars all uses other than agricultural use regardless of its secular or religious nature." Motion to Dismiss, MPAs P. 24:22-23.

The Plaintiff contends that the buildings they have built are not in breach of the land conservation contract signed by a preceding owner of the real property are not in breach of that contract.  Comp ¶ 173, P. 35:17-19.  The Plaintiffs also allege that the City contends the use of the buildings for religious purposes violate that land conservation contract.  Comp ¶ 172, P. 36:15-16..

1    The statute itself provides that in return for property tax relief, municipalities

2    and property owners may enter into contracts preserving the open space character of

3    the land.  Such contracts shall "[p]rovide for the exclusion of uses other than

4    agricultural, and other than those compatible with agricultural uses, for the duration of

5    the contract." **Cal Gov Code § 51243 (a)**.

6    The dispute giving rise to this specific claim is over the meaning of the  phrase

7    "compatible uses." The contract which is the subject of those claims  defines, in

8    Paragraph 2,  "agricultural uses .... and compatible uses" (See Complaint, Defendants'

9    RJN Exh. C, p. 2. The Plaintiffs allege the nine structures at issue in the lawsuit are all

10    "compatible uses" as defined by the contract, specifically: "(f) Living quarters and home

11    occupations"; "(I) Public and quasi-public buildings"; and "(n) Accessory use to the

12    above."  Complaint. ¶ 17, P. 3-12.

13    As noted, above, Bronwen Lacey,  City Attorney of Defendant Fremont stated to

14    Plaintiffs' Counsel that given the contract, a "House of Worship is not allowed [on the

15    real property]."  Complaint, ¶ 42, P. 10;26-27.  As shown in its moving papers, the City

16    of Fremont has repeatedly asserted that the buildings constructed by the Plaintiffs

17    breach the land conservation contract:.  See Notice and Order to Abate Nuisance, March

18    29, 2018, P. I, ¶ 3. (RJN Exh. F); Notice and Order to Abate Nuisance (Amended), March

19    11, 2021, P.  1-2 ¶ 4 (RJN Exh. I).  The City appears to have affirmed that position in its

20    moving papers.

21    **13.    THE CHALLENGED ORDINANCE ON ITS FACE**
**       PROHIBITS BUILDINGS CONSTRUCTED FOR**
22    **       RELIGIOUS PURPOSES**

23    In their seventh, eighth and ninth claims, Plaintiffs present facial challenges to

24    the City's open space zoning ordinance (Chapter 18.55) on facial grounds pursuant to

25    RLUIPA.  The gravamen of each of these claims is that the open space zoning ordinance

26    excludes religious uses and for that reason abridges the right of religious exercise.

27    The seventh claim alleges that the ordinance violates RIULPA in that the

28

ordinance imposes an undue burden on religious observance by not providing religious use as permissible in an area zoned "Open Space." Comp ¶¶ 134-137.

The eighth claim alleges that the City of Fremont's zoning ordinance teats religious institutions on less than equal terms than other institutions. Comp ¶¶ 145-147.

The ninth claim alleges that the City of Fremont's zoning ordinance unlawfully excludes religious uses from the Open Space Zoning District. Comp ¶¶ 153-154.

In its moving papers, the City of Fremont attacks these causes of action on the ground that the Municipal Ordinance Section 18.55.110 allows religious uses in an area zoned "open space" as "quasi public."[3] Motion to Dismiss MPAs P. 22:4-5.

However, the Plaintiffs' land, and that of others in an area zoned Open Space, are off limits to religious usage. In the moving papers, the Defendant acknowledges that "the only places are entirely prohibited in the open space district quasi-public usages are entirely prohibited in the open space district are in the land use designations of Hill (beyond Ridgeline), Hill Face and Private...." Motion to Dismiss MPAs P. 22:6-7.

However, in judicially noticeable testimony, James Willis, the member of the City's planning staff responsible for permit processing of the real property testified that 6800 Mill Creek is Hill beyond the ridge line. Plaintiff's Request for Judicial Notice in Opposition to Motion to Dismiss, Exh. A, P. 115:15-17. Willis in that testimony confirms that quasi public usage is not permitted on that property. Plaintiffs' RJN Exh A, P.115:22-116:12.

Accordingly, the Defendant's motion to dismiss as to the seventh, eighth and ninth claim must be denied because the challenged ordinance on its face does not permit religious use is on Plaintiff's property.

## 14.   PLAINTIFFS STATE A VIABLE DECLARATORY RELIEF

---

[3] Actually, assuming the Plaintiffs' property qualified for "quasi public" uses, which it does not, the particular usage of the property they seek is not embraced by the definition of quasi public use, which permits "use operated by a .... religious ..... institution with said use having the primary purpose of serving the general public." FMC 18.25.3080 (Defendant's RJN Exh B). The buildings at issue are designed for private usage and are not intended to be open to the public.

## CLAIM UNDER THE CALIFORNIA CONSTITUTION'S RELIGIOUS FREE EXERCISE CLAUSE

Plaintiffs are also asserting a religious discrimination claim pursuant to the California Constitution.

As shown above, the Municipal Ordinance Section 18.55.110 pertaining to the land upon which the Plaintiffs' property is located is zoned "Hill beyond the ridge line," in which quasi public usage for religious purposes are not allowed and for which no provision is made for strictly private religious usages.

The 12th claim alleges the effect of those ordinances is to implicate the Pliantiff's right of free exercise and enjoyment of their religion as protected by the Califorina Constitution.   Because the exercise of those rights, in this specific context, would be private and confined to the real property, the rights implicated would, in addition, to the free exercise of religion but also of privacy it is a hybrid rights claim which would invalidate Section 18.55.130 unless the strict scrutiny test is satisfied (i.e., the law is narrowly tailored to advance a compelling government interest). See **San Jose Christian College v. City of Morgan Hill,** (9th Cir, 2004)  360 F.3d 1024, 1031.

Even if the 12th claim is not construed as a "hybrid rights claim, the Defendant will have to come up with some sort of rational basis to justify the prohibition of religious uses of the Plaintiff's property.

The Defendant has so far articulated neither a rational basis or compeling interest for the exclusion of religious uses, whether public or private from the Plaintiffs' property.

## 15.   CONCLUSION

The Defendant's motion to dismiss should be denied for the reasons stated herein. To the extent the Court is inclined to grant the motion or any portion thereof, the Plaintiffs request that leave to amend be granted.

Date: July 23, 2021

Respectfully Submitted,

THE LAW OFFICES OF JOSEPH
L. ALIOTO & ANGELA ALIOTO

*/s/ Steven L. Robinson*

By: Steven L. Robinson
Attorneys for Plaintiff

Temple of Buddhas et al v. City of Fremont, Case No. 3;21-cv-04661
Plaintiffs' Memorandum in Opposition to Motion to Dismiss

26