1
2
3
4
5
6
7

8    TEMPLE OF 1001 BUDDHAS, et al.,          Case No.  21-cv-04661-CRB

9                         Plaintiffs,

10            v.                              **ORDER GRANTING MOTION TO
                                             DISMISS**
11    CITY OF FREMONT,

12                         Defendant.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

13           Plaintiff Miaolan Lee lives on property owned by the Temple of 1001 Buddhas in

14    Fremont, California.  For the past eight years, City of Fremont employees have had

15    numerous interactions with Lee and the property, all pertaining to whether certain

16    structures on the property comply with the City's land use laws and various California

17    laws and regulations.  After numerous searches, inspections, orders, and negotiations, the

18    City issued an amended Notice and Order to Abate Nuisance in March 2021.  The 58-page

19    Notice and Order listed violations of the Fremont Municipal Code and California laws

20    (including but not limited to the California Building Code, Electrical Code, and Plumbing

21    Code), and set a deadline for Lee to submit plans to fix the problems, which would require

22    demolishing certain structures.

23           Lee and the Temple sued the City, asserting a dozen claims under federal and

24    California law.  The City now moves to dismiss.  The Court determines that oral argument

25    is unnecessary and grants the City's motion to dismiss with leave to amend.

26    I.     **BACKGROUND AND PROCEDURAL HISTORY**

27           A.     **Factual Background**

28    This lawsuit concerns property located at 6800 Mill Creek Road in Fremont,

*United States District Court
Northern District of California*

California.

Although Lee did not own the property until 2010, the story begins more than thirty years earlier.  In 1978, a predecessor in interest to the property signed a "Land Conservation Contract" under California's Williamson Act with the City.  Compl. (dkt. 1) ¶ 15.  The Williamson Act provides that any city may "by contract limit the use of agricultural land for the purpose of preserving such land pursuant and subject to the conditions set forth in the contract" and elsewhere in the Act.  Cal. Gov. Code § 51240. Such a contract must exclude land "uses other than agricultural, and other than those compatible with agricultural uses, for the duration of the contract."  Id. § 51243.

Consistent with that requirement, the predecessor in interest's contract with the City stated:

> During the term of this contract, or any renewal thereof, the said property shall not be used for any purpose, other than agricultural uses for producing agricultural commodities for commercial purposes and compatible uses as listed below.

Compl. ¶ 15.  The contract then listed potential compatible uses, including "living quarters and home occupations," "public and quasi-public buildings," and "accessory use to the above."  Id.

Lee purchased the property, which remains subject to the Land Conservation Contract, in 2010.  Id. ¶¶ 13, 16.  In March 2018, Lee deeded ownership of the property to the Temple of 1001 Buddhas, but she has continued to live there.  Id. ¶ 14.[1]  The property is zoned as "open space" under the City's laws, and it contains various structures that Lee has used for religious purposes.  Id. ¶¶ 17, 19.

Starting several years after Lee's purchase, City employees have had numerous interactions with Lee and the property, culminating in the instant lawsuit.[2]

---

[1] The complaint does not clearly allege Lee's connection to the Temple, but indicates that Lee has continued to live on the property.  See Compl. ¶ 14; see also Opp. (dkt. 17) at 1 (referring to the property as "Lee's property").  The City has not argued that Lee's legal interest in the property is relevant.  The Court refers to Lee and the Temple collectively as "Lee."

[2] The complaint contains some allegations with no clear relevance to Lee's claims.  For example, Lee alleges that in 2013 and 2014, City Building Department Chief Chris Gale visited the property.  Compl. ¶ 25.  According to Lee, Gale gave her "permission" to use the property as a

United States District Court
Northern District of California

1    As relevant here, in October 2017, City Code Enforcement Manager Leonard

2  Powell sent Lee an email requesting access to the property.  Id. 27.  The next day, Powell

3  and other City employees "trespassed" on the property and took pictures.  Id. ¶¶ 28, 29.[3]

4    This upset Lee.  And in January 2018, Lee met with Gary West, the City's Building

5  Department Chief, and complained that City employees were discriminating against her

6  and had trespassed on the property.  Id. ¶ 34.  West told Lee that he urgently needed to

7  inspect the property.  Id. ¶ 35.  He then sought and obtained an inspection warrant from the

8  Superior Court.  Id. ¶ 36.  On February 8, 2019, the City hung a notice of inspection on the

9  property's front gate.  Id.  The next day, City employees searched the entire property,

10  including Lee's bedroom and "most closets in the residence."  Id. ¶ 38.  They "rummaged

11  through everything," including food in the kitchen and Lee's make-up.  Id.  City

12  employees then placed license plate recording cameras across the street from the property

13  from February 28, 2018 to March 9, 2018.  Id. ¶ 39.

14    Soon it became apparent why City employees had entered the property.  On March

15  29, 2018, the City issued a "Notice and Order to Abate Nuisance" listing numerous alleged

16  violations of the Fremont Municipal Code (FMC) and stating that no one could occupy

17  three structures on the property (the main Buddha hall, the dwelling unit, and the

18  meditation hall).  Id. ¶ 40.  In particular, the City noted that the three buildings were (1)

19  "erected and/or altered in violation of [FMC] Title 15," (2) "located in [a] very high fire

20  
21  place of "prayer for her and her family."  Id.  Lee was surprised to learn that "she needed
  permission to pray."  Id.  Although a person needing permission to pray would cause obvious
22  constitutional problems, Lee does not appear to have asserted any claim based on this
  conversation.  Gale also told Lee that Lee would need a permit if she wished to make any
23  improvements to a barn on the property, which she later did.  Id.  Again, this allegation has no
  clear relevance to Lee's claims.
24  [3] The employees reached the front gate of the property.  When the property's maintenance worker
  approached the gate to "see what they wanted," the gate automatically opened.  Compl. ¶ 28.  The
25  City employees drove inside and ignored the maintenance worker.  Id.  In December 2017, a
  California Department of Fish and Game warden accessed the property without permission.  Id.
26  ¶ 30.  According to Lee, he "roamed the property . . . and then left a business card at the
  residence."  Id.  But Lee is suing only the City here.  Lee also alleges that during a City Hall
27  meeting with Powell, Powell told her that she "looked prettier without a hat."  Id. ¶ 32.  Lee
  complained about Powell's behavior and objected to Powell's use of the letters "JD" on his City-
28  issued business cards because Powell is not a lawyer.  See id. ¶ 34.  Again, Lee has not asserted
  any claim based on these allegations.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12

hazard severity zone without adequate fire-resistance-rated construction and fire protection systems," (3) "lack[ing] adequate light, ventilation, illumination, insulation, sanitary facilities, and other essential equipment," (4) "on hillsides in earthquake induced landslide zones without appropriate mitigation measures," (5) "constructed without adequate structural and foundation systems," creating a "substantial risk of partial or complete collapse in [the] event of earthquake and earthquake induced landslides," (6) "constructed without plans or permits and the City [was] unable to determine the electrical connections and service for each," and (7) lacking in "proper on site waste disposal and waste water treatment" so as to "pose contamination risk to adjoining streams, springs, and groundwater."  RJN Ex. I (dkt. 12-8).  After Lee appealed the Notice and Order, the City Attorney told her that the Notice and Order would remain in effect based on the Land Conservation Contract.  See Compl. ¶ 42.[4]

13
14
15
16
17
18
19

In May 2018, Lee met with City staff "to attempt to resolve all concerns stated by the City."  Id. ¶ 43.  She agreed to allow City employees to inspect the property several days later.  But a City Code Enforcement Officer cancelled the appointment and instead sought and obtained an inspection warrant from the Superior Court.  Id.  The Officer's warrant application stated that Lee had not consented to City employees entering the property.  Id.  City employees executed the warrant and inspected the property again.  Id. ¶¶ 44–45.

20
21
22
23
24

The City took additional action based on this inspection.  In June 2018, West sent Lee a Notice and Order to vacate three buildings on the property (a new two-story structure, a three-story building that had been a one-story garage, and a two-story building that was formerly a barn).  Id. ¶ 47.  This Notice and Order stated that the buildings were "unlawful, unsafe[,] and unfit for human occupancy."  Id.  It required Lee to remove "all

25
26
27
28

---

[4] The Court may consider the Notice and Order and other relevant documents discussed here because they are incorporated by reference in the complaint.  See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018).  For the same reason, the Court grants the City's request for judicial notice (dkt. 12).

1    personal property" from them within two weeks.  Id.  Lee refused to remove Buddha

2    statues from one structure.  Id. ¶ 48.  According to Lee, West informed her that she could

3    pray in a dome meditation hall on the property and in the main house, but nowhere else.

4    Id. ¶ 49.  Later that month, City employees "requested and obtained entry" to the property,

5    then posted notices barring entry on the "condemned buildings" and at the main entrance.

6    Id.  ¶ 50.

7         Lee responded to the June 2018 Notice and Order in various ways.  For example,

8    she sent the City notices of appeal, retained various structural engineers and consultants to

9    perform work on the buildings, and updated the City as she attempted to bring the

10   buildings into compliance with the City's instructions.  Id. ¶¶ 52, 55.  City employees had

11   several meetings with Lee's consultants and representatives regarding plans for the

12   property and permit applications.  Id. ¶¶ 57–58.

13        But these steps did not lead to a mutually agreeable resolution.  In May 2019, the

14   City recorded a Notice of Substandard Building/Structure with the County Recorder's

15   Office of the County of Alameda.  Id. ¶ 59.  The next month, Lee sent City

16   Councilmember Raj Salwan a letter "complaining about discriminatory code enforcement"

17   and the "inspection warrants."  Id. ¶ 60.  According to Lee, the Chief City Attorney told

18   Salwan that the City was "going to sue Ms. Lee" because of Lee's opposition to the

19   religious and racial discrimination she was experiencing.  Id. ¶ 60.[5]  Lee alleges that

20   despite her efforts, the City had decided to not engage in a "collaborative process."  Id.

21   ¶ 62.  "In fact, it was impossible" for her to "complete the application process" and get the

22   necessary permits because the City "wanted the Temple to be torn down."  Id.  Lee

23   nonetheless applied for permits on October 7, 2019.  Id. ¶ 63.[6]

24   _____

25   [5] In September 2019, the City issued citations to Lee and her bookkeeper.  Compl. ¶ 61.  Lee was
     unable to determine why she was cited, but in March 2020, the City withdrew the citations.  Id.
26   ¶¶ 65, 69.
     [6] Lee paid the City $27,250 in application fees to get conditional use permits.  Compl. ¶ 63.  Lee
27   alleges that the "regular price is $7,250," but the City planner insisted that Lee pay an additional
     $20,000 fee "for design review," even though the City does not "ordinarily . . . charge such fees at
28   the outset of the process."  Id.

1       Shortly thereafter, City employees made inartful statements suggesting that Lee was

2   using religious rhetoric to obscure the problems with the property.  In December 2019, Lee

3   met with Wayne Morris, the City's Deputy Community Director, and Powell.  Id.  Morris

4   and Powell "insisted that Ms. Lee was using religion as a protective shield."

5   Id.  According to Lee, Morris asked whether Lee thought "Buddha is ok with this

6   construction."  Id.  Lee alleges that Morris laughed while asking whether she thought that

7   "Buddha is ok with what you are doing?"  Id.  Morris then told Lee that the permit process

8   was "going to be so expensive" that Lee would "give up and demolish."  Id.  Morris

9   expressed that the buildings "need to come out."  Id.

10       In January 2020, Morris, Powell, and James Willis (another city employee)

11   inspected the property again.  Id. ¶ 67.  Two days later, Lee told Willis that her neighbor

12   had performed unpermitted work on his property.  Id. ¶ 68.  When Lee first met her

13   neighbor, the neighbor told her that he had completed various construction projects

14   without the City's approval and used herbicide extensively on his property.  See id. ¶¶ 23–

15   24.  But according to Lee, "the City has never done anything" about her neighbor's

16   violations, besides sending the neighbor a letter stating that he could apply for permits "to

17   legalize" his past "unpermitted construction."  Id. ¶¶ 23, 80.  In April 2020, Lee witnessed

18   her neighbor looking at her property with binoculars.  Id. ¶ 70.

19       Lee continued attempting to work with the City to address the issues on the

20   property.  In October 2020, she submitted a modified application for permits.  Id. ¶ 71.

21   The application described certain "mitigating measures" that Lee needed the City to

22   address for Lee to "move on with the process."  Id. ¶ 72.  Willis told Lee that the

23   application was incomplete.  Id. ¶ 72.[7]

24       On March 11, 2021, the City issued an Amended Notice and Order to Abate

25   

26   [7] In December 2020, a City Code Enforcement Officer emailed Lee that the City had not received
a progress update and timeline regarding the removal and reconstruction of unlawful structures.

27   See Compl. ¶ 73.  Lee alleges that she had provided such updates, and she responded to the email
by requesting a response regarding her proposed mitigation measures.  Id.  She also raised

28   numerous complaints regarding the inspection warrants that had been executed on the property.
See id.  The City employee did not respond.  Id.

United States District Court
Northern District of California

1  Nuisance.  Id. ¶ 75.  The 58-page document required the demolition of three buildings on

2  the property based on violations identified in inspections after the City issued its June 2018

3  Notice and Order.  Id.[8]  And the Amended Notice and Order listed numerous violations of

4  the City's zoning laws, along with violations of the City's permitting rules and California's

5  Building Code, Electrical Code, Plumbing Code, Mechanical Code, Fire Code, Fish and

6  Game Code, and Environmental Quality Act.  See, e.g., RJN Ex. I at 7, 10–11, 13–14, 17,

7  23–24, 26–27, 32–33, 38, 46–50, 52.

8       **B.  Procedural History**

9       In January 2018, Lee submitted a claim for damages to the City and the California

10  Department of Fish and Game.  See RJN Ex. J (dkt. 12-10).  The claim stated that on

11  October 27, 2017, City employees entered the property without consent or a warrant.  Id.

12  It described that day's inspection and asserted various causes of action.  See id.  The same

13  month, the City sent Lee a notice rejecting the claim.  See RJN Ex. K (dkt. 12-11).

14       In April 2021, Lee submitted another claim for damages based on events involving

15  her property from October 2017 to April 2021.  See RJN Ex. L (dkt. 12-12).  As relevant

16  here, the claim form reads:

17       What happened and why do you believe the City is responsible?  Race, religion,
18       gender discrim.  Fraud, trespass, 4 amend violation of Constitution, whistleblowing
         to FBI on gov corruption, intentional inflection of emo distress.
19
20       Description of damage or loss: Civil rights, emotional distress, invasion of privacy,
         abuse of power, unconstitutional invasions.  Fraud, tress.  $ amount is up to the jury
21       to decide.

22  Id.  The form did not contain additional details but provided Lee's attorney's contact

23  information "for any questions."  Id.  In May 2021, the City sent Lee a notice of

24  insufficiency indicating that Lee's claim lacked necessary detail.  See RJN Ex. M (dkt. 12-

25  13).  The City directed Lee to provisions of the California Government Code regarding the

26

27  _____

28  [8] According to Lee, Salwan told her to give the City employees "some money" to make her problems with the City "go away."  Compl. ¶ 79.

7

1   presentation of claims against public entities.  See id.

2        Later in May 2021, Lee submitted an amended claim.  See RJN Ex. N (dkt. 12-14).

3   The amended claim again stated that the relevant injury occurred from "October 2017 to

4   the present."  Id.  The amended claim form reads:

5        What happened and why do you believe the City is responsible?  The City of
         Fremont has interfered with and/or prevented the practice of my religion by Code
6        Enforcement, Planning & Building Depts. Precluded my association with others of
7        my faith, Invasion of privacy.  Religious & National Origin Discrim.

8        Description of damage or loss: Loss of use of real property and structures on real
9        property.  Damage to reputation.  Emotional Distress.

10  Id.  The City issued another notice stating that Lee's amended claim was insufficient "even

11  when read together with the initial claim."  RJN Ex. O (dkt. 12-15).  The City gave Lee 15

12  days to submit yet another amended claim.  Id.  After Lee failed to do so, the City rejected

13  Lee's claim.  See RJN Ex. P (dkt. 12-16).

14       In June 2021, the Temple and Lee filed the instant lawsuit, asserting a dozen federal

15  and state causes of action.  See Compl.  The Temple and Lee asserted two 42 U.S.C.

16  § 1983 claims based on religious discrimination and retaliation, five claims under the

17  Religious Land Use and Institutionalized Persons Act (RLUIPA), and one claim under the

18  California Constitution's Free Exercise Clause.  Id. ¶¶ 82–90, 99–107, 132–188.  Lee

19  individually asserted additional § 1983 claims for discrimination based on race,

20  discrimination based on national origin, and unreasonable searches, along with two

21  California claims for invasion of privacy and arbitrary discrimination.  Id. ¶¶ 91–98, 108–

22  131.[9]

23       The City now moves to dismiss.  See Mot. to Dismiss (dkt. 11).

24  **II.     GENERAL LEGAL STANDARD**

25       Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be

26  dismissed for failure to state a claim for which relief may be granted.  Fed. R. Civ. P.

27

28  _____

[9] As noted above, the Court refers to the Temple and Lee collectively as "Lee."  See supra note 1.

12(b)(6).  Rule 12(b)(6) applies when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory.  Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019).  Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678.  When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).

The Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

When dismissing a case, courts generally must give leave to amend unless it is "determined that the pleading could not be cured by the allegation of other facts" and therefore amendment would be futile.  Cook, Perkiss & Leihe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990).

### III.    DISCUSSION

The Court grants the City's motion to dismiss.  Lee's California causes of action fail because Lee did not comply with California's statutory claim presentation requirements.  Lee's federal § 1983 claims fail because Lee is suing only the City and has not set forth allegations that establish the elements of municipal liability under § 1983. Lee's federal RLUIPA claims fail because they either (1) rely on erroneous interpretations of the Fremont Municipal Code and the Land Conservation Contract, or (2) broadly challenge the entire 2021 Amended Notice and Order, much of which does not implement

1   any land use regulation.  The Court gives Lee leave to amend her complaint in its entirety.

2   **A.      California Law Claims (Claims 5, 6, and 12)**

3   Lee asserts three California causes of action.  None satisfies California's statutory

4   claim presentation requirements.

5   **1.      Claim Presentation Requirements**

6   In California, "no suit for money damages may be brought against a public entity on

7   a cause of action for which a claim is required to be presented . . . until a written claim

8   . . . has been presented to the public entity and has been acted upon by the board, or has

9   been deemed to have been rejected by the board."  Cal. Govt. Code § 945.4.  To satisfy

10   this presentation requirement, a claim "shall show" certain information.  Id. § 910.  As

11   relevant here, this information includes "[t]he date, place and other circumstances of the

12   occurrence or transaction which gave rise to the claim asserted," "[a] general description of

13   the . . . injury, damage or loss incurred so far as it may be known at the time of

14   presentation of the claim," "[t]he name or names of the public employee or employees

15   causing the injury, damage, or loss," and "[t]he amount claimed," unless that amount

16   exceeds $10,000, in which case no dollar amount is necessary but the claim "shall indicate

17   whether the claim would be a limited civil case."  Id. §§ 910(c)–(f).

18   Despite the statute's seemingly mandatory language, California courts apply "the

19   substantial compliance test" to these requirements.  Cnty. of Los Angeles v. Superior

20   Court, 159 Cal. App. 4th 353, 360 (2008).  Under that test, the requirements "should not be

21   applied to snare the unwary where [their] purpose has been satisfied."  Donohue v. State of

22   California, 178 Cal. App. 3d 795, 804 (1986).  Instead, (1) there must be "some

23   compliance with all of the statutory requirements," and (2) the claim must disclose

24   "sufficient information to enable the public entity adequately to investigate the merits of

25   the claim so as to settle the claim, if appropriate."  Cnty. of Los Angeles, 159 Cal. App. 4th

26   at 360 (quotation omitted) (emphasis in original).  When a claim "fails to set forth the

27   factual basis of recovery," Watson v. State of California, 21 Cal. App. 4th 836, 845 (1993),

28   or when a plaintiff asserts a cause of action based on "a set of facts entirely different from

1    those first noticed" via a claim, <u>Fall River Joint Unified School Dist. v. Superior Court</u>,

2    206 Cal.App.3d 431, 435 (1988), there is no substantial compliance.

3        California law also establishes limitations periods for causes of action to which the

4    claim presentation requirements apply.  If a public entity has provided written notice that a

5    claim has been rejected, the claimant can assert the relevant cause of action in court "not

6    later than six months after the date such notice [was] personally delivered or deposited in

7    the mail."  Cal. Govt. Code § 945.6(a)(1).

8                    **2.**        **Application**

9        Lee's California causes of action are barred by these presentation requirements,

10   even under the forgiving "substantial compliance test."  <u>See</u> <u>Cnty. of Los Angeles</u>, 159

11   Cal. App. 4th at 360.

12                **a.**        **Invasion of Privacy (Claim 5)**

13       Lee's fifth cause of action for "invasion of privacy" and "government snooping" is

14   based on various past actions taken by City employees.  Compl. ¶¶ 117–119.  In particular,

15   this cause of action arises from Lee's allegations regarding City employees' alleged

16   "unauthorized entries" onto the property, falsification of information in inspection warrant

17   applications, and failure to give Lee notice before seeking the inspection warrants, plus

18   City employees exceeding the scope of those warrants while on the property, installing

19   cameras outside the property to monitor visitors, using "neighborhood informants" to

20   monitor activity on the property, and conducting overhead surveillance of the property.  <u>Id.</u>

21   ¶ 119.

22       Before asserting this cause of action in the instant lawsuit, Lee did not present a

23   claim that substantially complies with California's presentation requirements.  More

24   specifically, Lee's claim form did not articulate any "factual basis for recovery" relating to

25   this cause of action.  <u>See</u> <u>Watson</u>, 21 Cal. App. 4th at 845.  In January 2018, Lee submitted

26   a claim that described (in some detail) City employees' entries on and inspections of the

27   property in October and December 2017.  <u>See</u> RJN Ex. J.  Because Lee did not sue within

28   six months of the City's rejection of that claim, <u>see</u> RJN Ex. K, Lee cannot assert a cause

United States District Court
Northern District of California

11

of action based on those details here, see Cal. Govt. Code. § 945.6(a)(1).  Thus, the Court

must examine only Lee's more recent claim.  See RJN Exs. L, N.  In Lee's first May 2021

claim, as relevant to this cause of action, she said only that the city had engaged in

"trespass" and a Fourth Amendment "violation" that caused her to suffer "invasion of

privacy" and "unconstitutional invasions."  RJN Ex. L.  Lee's amended claim said even

less, stating only that Lee had suffered an "invasion of privacy."  RJN Ex. N.  The

amended claim also failed to name any City employees who invaded Lee's privacy or

engaged in impermissible snooping.  See Cal. Govt. Code § 910(e).  Because there was no

compliance with some of the statutory requirements—namely, the requirements that Lee

provide some factual basis for the claim and name the City employees involved—there

was not "some compliance with all of the statutory requirements."  Cnty. of Los Angeles,

159 Cal. App. 4th at 360 (emphasis in original).

Therefore, the Court grants the City's motion to dismiss this cause of action with

leave to amend.  Although Lee cannot seek damages, Lee could conceivably amend this

cause of action to seek only injunctive and declaratory relief and thereby avoid

California's claim presentation requirements.  Of course, to state a viable claim, Lee's

allegations (accepted as true) would have to entitle her to such prospective relief.

### b.    Arbitrary Discrimination (Claim 6)

Lee's sixth cause of action asserts that the City "has a policy and practice of

discriminating against Asians and Buddhists" and that City employees' actions with

respect to Lee and the Temple were motivated by "discriminatory animus."  Compl.

¶¶ 125, 127–28.  Lee invokes California's Unruh Civil Rights Act, which prohibits

discrimination based on race and religion.  See Cal. Civ. Code §§ 51, 52(a).

Here again, Lee did not present a claim that substantially complies with California's

presentation requirements because Lee's claim form provided no "factual basis for

recovery."  See Watson, 21 Cal. App. 4th at 845.  In Lee's initial May 2021 claim, she said

only that the city had engaged in "race, religion, [and] gender discrim[ination]," without

further detail.  RJN Ex. L.  Similarly, Lee's amended claim stated only that Lee had been

subjected to "religious & national origin discrim[ination]."  RJN Ex. N.  Such bare

conclusions, devoid of any supporting details, could not have enabled the City "to

investigate the merits of the claim so as to settle the claim, if appropriate."  <u>Donohue</u>, 178

Cal. App. 3d at 804.  And again, the May 2021 claim and amended claim named no City

employees who had discriminated against Lee.  Thus, there was not "<u>some</u> compliance

with <u>all</u> of the statutory requirements."  <u>Cnty. of Los Angeles</u>, 159 Cal. App. 4th at 360

(emphasis in original).

Therefore, the Court grants the City's motion to dismiss this cause of action with

leave to amend.  Again, Lee could conceivably amend this cause of action to seek only

prospective relief.

### c.      Free Exercise of Religion (Claim 12)

Lee's twelfth cause of action asserts that FMC section 18.55.110 violates the

California Constitution's Free Exercise Clause.  Compl. ¶¶ 181–83.  Lee requests an order

declaring FMC section 18.55.110 "unenforceable and void" and an injunction preventing

the City from enforcing it.  <u>Id.</u> ¶¶ 185–86.  But Lee acknowledges that she also seeks

"monetary compensation," Opp. at 14, based on the "severe emotional distress" and

"monetary losses" that the City's enforcement efforts have caused, Compl. ¶¶ 187–88.

### i.      Presentation

California's claim presentation requirements apply to a cause of action seeking both

monetary and non-monetary relief if the monetary relief is not "incidental" to the other

relief sought.  <u>Lozada v. City and Cnty. of San Francisco</u>, 145 Cal. App. 4th 1138, 1146

(2006).  Lee argues that California's claim presentation requirements do not apply to this

cause of action because Lee requests monetary compensation only "as an incident" to

declaratory and injunctive relief.  Opp. at 14.

Monetary relief is "incidental" when entitlement to declaratory or injunctive relief

necessarily results in an award of monetary damages without further litigation.  One thing

is "incident" to some other thing when it is "[d]ependent on, subordinate to, arising out of,

or otherwise connected with" that other thing.  See <u>Incident (adj.)</u>, Black's Law Dictionary

(10th Ed. 2014).  Consistent with that typical usage, the U.S. Supreme Court has explained (in another context) that damages are "incidental" to other relief when they "flow directly from liability."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 365–66 (2011) (quotation omitted).  That means monetary relief is "incidental" when it necessarily arises from entitlement to other relief.  For example, when an employer must reinstate a former employee, California courts have awarded "back pay and benefits as incidental to the injunctive and declaratory relief of employment reinstatement" because entitlement to back pay and benefits follows logically from entitlement to reinstatement.  See Lozada, 145 Cal. App.4th (collecting cases).

California's claim presentation requirements apply to Lee's California Free Exercise Clause cause of action because the monetary relief that Lee seeks is not incidental to the other relief that she seeks.  If Lee were entitled to prospective relief (such as an order enjoining the City from enforcing FMC section 18.55.110), the monetary relief that Lee seeks would not necessarily follow.  See Dukes, 564 U.S. at 366.  Even if FMC section 18.55.110 or its enforcement violated Lee's rights under the California Constitution's Free Exercise Clause, Lee would not necessarily be entitled to damages for Lee's "emotional pain and suffering" and "monetary losses" without further litigation.  See Compl. ¶¶ 187–88.  Indeed, Lee characterizes the monetary relief she seeks "as an incident" to other relief without ever explaining why that is so.  See Opp. at 14.

Applying California's claim presentation requirements, Lee's first May 2021 claim said nothing about her religious activities.  See RJN Ex. L.  Lee's amended claim said that the City had "interfered with and/or prevented the practice of my religion by Code Enforcement, Planning & Building Depts. Precluded my association with others of my faith."  RJN Ex. N.  The amended claim was thus devoid of any factual detail supporting this cause of action and (once again) failed to name any City employees.  See Watson v. State of California, 21 Cal. App. 4th at 845.

As with Lee's other California causes of action, the Court grants the City's motion to dismiss with leave to amend because Lee could conceivably state a claim for non-

14

1    monetary relief and avoid application of California's claim presentation requirements.

2                    **ii.        Failure to State a Claim**

3            Although Lee's California Free Exercise Clause cause of action fails based on

4    California's claim presentation requirements, the Court briefly addresses the merits to

5    avoid the need for repeated amendments.  Lee's complaint asserts that FMC section

6    18.55.110 violates California's Free Exercise Clause because it "totally excludes religious

7    uses from an open space zoning district," and thus "precludes the 'free exercise and

8    enjoyment of religion' within the boundaries" of such a district.  Compl. ¶ 182.  But that is

9    not a plausible interpretation of FMC section 18.55.110.

10                                        *

11           The California Constitution provides (in relevant part) that "[f]ree exercise and

12   enjoyment of religion without discrimination or preference are guaranteed.  This liberty of

13   conscience does not excuse acts that are licentious or inconsistent with the peace or safety

14   of the State."  Cal. Const. Art. I, § 4.

15           California's Free Exercise Clause bears some resemblance to the U.S.

16   Constitution's Free Exercise Clause, which provides that "Congress shall make no law

17   . . . prohibiting the free exercise" of religion.  U.S. Const. amend I.  In Sherbert v. Verner,

18   the U.S. Supreme Court held that a law that substantially infringes a person's religious

19   exercise violates the First Amendment's Free Exercise Clause absent a compelling

20   government interest.  374 U.S. 398, 406–07 (1963).  But later, in Employment Division,

21   Oregon Department of Human Resources v. Smith, the U.S. Supreme Court held that the

22   First Amendment's Free Exercise Clause "does not relieve an individual of the obligation

23   to comply with a valid and neutral law of general applicability on the ground that the law

24   proscribes (or prescribes) conduct that his religion prescribes (or proscribes)."  494 U.S.

25   872, 879 (1990) (quotation omitted).

26           The California Supreme Court has repeatedly held that the U.S. Supreme Court's

27   application of the First Amendment's Free Exercise Clause does not control application of

28   California's Free Exercise Clause.  See, e.g., N. Coast Women's Care Med. Grp., Inc. v.

United States District Court
Northern District of California

15

1   Superior Court, 44 Cal. 4th 1145, 1158 (2008); Catholic Charities of Sacramento, Inc. v.

2   Superior Court, 32 Cal.4th 527, 560–62 (2004).

3       But the California Supreme Court has also declined to "determine the appropriate

4   test" for challenges under California's Free Exercise Clause.  N. Coast Women's Care

5   Med. Grp., 44 Cal.4th at 1158.  Indeed, the California Supreme Court has left open

6   whether Sherbert, Smith, "or an as-yet unidentified rule that more precisely reflects the

7   language and history of the California Constitution" applies to challenges under

8   California's Free Exercise Clause.  Id. at 1159 (quoting Catholic Charities of Sacramento,

9   32 Cal.4th at 562) (emphasis omitted).

10      Instead, the California Supreme Court has assumed without deciding that Sherbert's

11   strict scrutiny test applies to such challenges.  See id.; Catholic Charities of Sacramento,

12   32 Cal.4th at 562.  "Under that standard, a law could not be applied in a manner that

13   substantially burdened a religious belief or practice unless the state showed that the law

14   represented the least restrictive means of achieving a compelling interest or, in other

15   words, was narrowly tailored."  Catholic Charities of Sacramento, 32 Cal.4th at 562.  If a

16   Court determines that a challenged law passes muster under strict scrutiny, the court need

17   not consider whether a less stringent standard should apply.  See id.

18                                          *

19      Here, Lee challenges FMC section 18.55.110 under California's Free Exercise

20   Clause.  Chapter 18.55 of Fremont's Municipal Code establishes an "open space district"

21   in the City.  See FMC Ch. 18.55; RJN Ex. A at 1.  The provision's express purpose is "to

22   permit limited but reasonable use of open lands while protecting the public health, safety

23   and welfare from the dangers of seismic hazards and unstable soils; preserve the

24   topography of the city that shapes it and give it its identity; allow land to be used for

25   agricultural production in its natural or as near natural state as possible; coordinate with

26   and carry out regional, county, and city open space plans; and where permitted, encourage

27   clustering of dwelling units in order to preserve and enhance the remainder of open space

28   lands as a limited and valuable resource."  See FMC § 18.55.010; RJN Ex. A at 1.  To

United States District Court
Northern District of California

1   effectuate these purposes, the City's plan "identifies seven different open space land use

2   designations to address a variety of open space opportunities and constraints." Id.  Chapter

3   18.55 also sets forth building height standards, area, lot width, and yard standards,

4   performance standards (which govern construction requirements for dwellings and other

5   structures), land constraints, and other rules.  See FMC §§ 18.55.010–18.55.110; RJN Ex.

6   A.

7          Section 18.55.110 contains a table that "establishes allowed uses within an open

8   space zoning district."  FMC § 18.55.110; RJN Ex. A at 11.  The table lists numerous

9   categories of land use, including "agricultural," "commercial and service," "recreation and

10  open space," "residential," "public and quasi-public," and "other."  FMC § 18.55.110,

11  Table 18.55.110; RJN Ex. A at 12–15.  The "public and quasi-public" category lists

12  several specific uses, then includes a catch-all for more general public and quasi-public

13  uses.  FMC § 18.55.110, Table 18.55.110; RJN Ex. A at 14.[10]  The quasi-public use catch-

14  all, in turn, includes "a use operated by a . . . religious . . . institution, with said use having

15  the primary purpose of serving the general public."  See FMC § 18.25.3080; RJN Ex. B

16  ¶ 2.  Such a use is permitted, with a conditional use permit, in four of the open space plan's

17  seven land use designations.  Such a use is not permitted in three of the open space plan's

18  land use designations (land designated as (1) Hill (beyond Ridgeline), (2) Hill Face, and

19  (3) Private).  See FMC § 18.55.110, Table 18.55.110; RJN Ex. A at 14.

20         Lee's complaint asserts that FMC section 18.55.110 violates California's Free

21  Exercise Clause because it "totally excludes religious uses from an open space zoning

22  district," and thus "precludes the 'free exercise and enjoyment of religion' within the

23  boundaries" of such a district.  Compl. ¶ 182.  Lee's complaint does not allege that FMC

24  section 18.55.110 violates California's Free Exercise Clause on any other basis.

25         This cause of action would fail on the merits because it rests on an erroneous

26  interpretation of the City's open space plan.  Section 18.55.110 allows (with a conditional

27

28  _____
    [10] The table excludes certain categories of public or quasi-public use, not relevant here, from the
    catch-all.  See FMC § 18.55.110, Table 18.55.110; RJN Ex. A at 14.

United States District Court
Northern District of California

1    use permit) for the operation of a religious institution in four of the plan's seven land use

2    designations.  See FMC § 18.55.110, RJN Ex. A at 14; FMC § 18.25.3080, RJN Ex. B ¶ 2.

3    Thus, Lee's assertion that FMC section 18.55.110 precludes all religious uses in the open

4    space zoning district is wrong.

5         Lee's opposition to the City's motion to dismiss asserts a different theory.  It argues

6    that because Lee's property is designated as Hill (beyond ridgeline), Lee cannot use the

7    property for quasi-public religious purposes.  See Opp. at 24–25.  And Lee asserts that

8    because "no provision is made for strictly private religious usages" either, the City's

9    zoning scheme violates California's Free Exercise Clause.  Id. at 25.  Because the

10   complaint neither asserts this theory of liability nor contains allegations supporting it, the

11   Court cannot consider it.[11]

12        If Lee attempts to assert this cause of action again in an amended complaint, Lee

13   should be mindful of not only California's claim presentation requirements, but also how

14   FMC section 18.55.110 actually works.

15        **B.    Section 1983 Claims**

16        Lee raises four claims under 42 U.S.C. § 1983.  These claims assert that Lee has

17   suffered religious discrimination, national origin discrimination, and retaliation for Lee's

18   opposition to the City's allegedly discriminatory actions, and that City employees

19   unlawfully searched Lee's property.  Compl. ¶¶ 82–114.  Each claim fails for the same

20   reason:  Lee has sued only the city, but Lee's allegations do not give rise to municipal

21   liability under § 1983.  The Court thus grants the City's motion to dismiss these claims

22   with leave to amend.

23        **1.    Legal Standard**

24        Under 42 U.S.C. § 1983, any person who, "under color of" state law, subjects any

25   person "to the deprivation of any rights, privileges, or immunities secured by the

26

27   [11] Lee argues that section 18.55.110 also implicates her privacy rights, such that her twelfth cause
     of action is a "hybrid rights" claim.  Opp. at 25.  But the cause of action (as articulated in the
     complaint) lacks allegations relating to Lee's privacy interests.  Nor is it apparent how the City's
28   open space zoning plan, on its face, could possibly burden Lee's privacy rights.

United States District Court
Northern District of California

1

2

3

4

5

6

7

Constitution and laws, shall be liable to the party injured in an action at law."

"[M]unicipalities and other local government units" are "included among those persons to

whom § 1983 applies." <u>Monell v. Dept. of Soc. Servs. of City of New York</u>, 436 U.S. 658,

690 (1978). That said, "Congress did not intend municipalities to be held liable unless

action pursuant to official municipal policy of some nature caused a constitutional tort."

<u>Id.</u> at 691. That means "a municipality cannot be held liable <u>solely</u> because it employs a

tortfeasor . . . on a <u>respondeat</u> <u>superior</u> theory." <u>Id.</u> (emphasis in original).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

Thus, § 1983 embraces a cause of action against a municipality only when "the

action that is alleged to be unconstitutional implements or executes a policy statement,

ordinance, regulation, or decision officially adopted and promulgated by that body's

officers," or implements or executes a less formal "governmental custom." <u>Id.</u> at 690–91

(quotation omitted); <u>see also</u> <u>Castro v. Cnty. of Los Angeles</u>, 833 F.3d 1060, 1073 (9th Cir.

2016) (en banc) ("In order to establish municipal liability, a plaintiff must show that a

policy or custom led to the plaintiff's injury.") (quotation omitted). That does not mean

the relevant policy or custom itself must be unconstitutional. <u>See</u> <u>City of Canton, Ohio v.</u>

<u>Harris</u>, 489 U.S. 378, 387 (1989). But there must be "a direct causal link between a

municipal policy or custom and the alleged constitutional deprivation." <u>Id.</u> at 385. And

the policy or custom must be "the moving force behind the constitutional violation." <u>Id.</u> at

388 (alteration and quotation omitted). In other words, "city policymakers" must make "a

deliberate choice to follow a course of action" that "reflects deliberate indifference to the

constitutional rights of [the city's] inhabitants." <u>Id.</u> at 389, 392 (quotations omitted).

22

23

### 2.    Application

#### a.    Religious Discrimination (Claim 1)

24

25

26

27

28

Lee's first § 1983 claim asserts that the City has deprived Lee of her right to use the

property for religious purposes based on religious animus. Compl. ¶ 86. According to

Lee, the City's code enforcement actions were motivated by animus because City

employees accused Lee of "hiding behind the Buddha" and tolerated "non permitted uses

of neighboring properties which are secular." <u>Id.</u> ¶ 87. Lee believes that the code

enforcement actions have denied her "equal protection of the laws" under the Fourteenth Amendment and the "free exercise" of her religion under the First Amendment.  Id. ¶ 83, 88.  And Lee alleges that the City "acted unreasonably because it knew and/or should have known that its code enforcement activities would cause [her] emotional pain and suffering."  Id. ¶ 90.

These allegations are not enough to establish municipal liability under § 1983. They do not show that "there is a direct casual link between a municipal policy or custom and the alleged constitutional deprivation."  City of Canton, 489 U.S. at 385.  Based on the broader complaint, the only policy or custom relevant to this cause of action is FMC section 18.55.110.  Elsewhere, Lee asserts that section 18.55.110 precludes "any form of religious use" of land in the City's open space district.  Compl. ¶ 20.  As discussed above, that is not true.  See part III.2.c.ii.[12]  And this cause of action does not even mention FMC section 18.55.110.  Thus, this cause of action does not challenge the constitutionality of any City policy or custom, or assert that any particular policy or custom "reflects deliberate indifference to the constitutional rights" of the City's inhabitants.  See City of Canton, 489 U.S. at 392.  Instead, it appears to rest on City employees' individual enforcement decisions and actions.  Lee did not sue those employees as individuals, and she cannot sue the City for employing constitutional tortfeasors.  See Monell, 536 U.S. at 691.[13]

---

[12] If Lee wishes to assert that section 18.55.110 is a policy that has caused her constitutional deprivation and that reflects deliberate indifference to constitutional rights, she must allege why that is so based on the provision's actual content.

[13] The Ninth Circuit has held that if a municipal employee was acting as a "final policymaker," the employee's decision can give rise to Monell liability.  Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004) (quotation omitted).  "For a person to be a final policymaker, he or she must be in a position of authority such that a final decision by that person may appropriately be attributed to the [municipality]."  Id. at 983.  Lee has not alleged that any City employee was acting as a "final policymaker" here.  Although Lee argues in her supplemental brief that Gary West is a city policymaker, see Lee Supp. Br. (dkt. 23) at 1, the allegations in Lee's complaint fail to establish that West engaged in conduct giving rise to Lee's § 1983 claims while acting as a final policymaker.  Relatedly, the Court denies Lee's requests for judicial notice as improper attempts to amend her complaint during briefing on the City's motion to dismiss.  See Request for Jud. Notice (dkt. 17-1); Supp. Request for Jud. Notice (dkt. 23-1).  Lee can include these additional allegations in an amended complaint.

United States District Court
Northern District of California

1   The Court need go no further.  Because Lee is suing only the City and failed to

2   plausibly allege municipal liability under § 1983, the Court grants the City's motion to

3   dismiss this cause of action with leave to amend.

b.   **National Origin Discrimination (Claim 2)**

5   Lee's § 1983 national origin discrimination claim is almost identical to her § 1983

6   religious discrimination claim.  According to Lee, the City's different treatment of her

7   neighbor shows that animus drove the City's code enforcement actions.  See Compl. ¶ 95.

8   And Lee alleges that the City "acted unreasonably because it knew and/or should have

9   known that its code enforcement activities would cause [her] emotional pain and

10  suffering."  Id. ¶ 98.

11  These allegations are not enough to establish municipal liability for the same

12  reasons discussed above.  Because Lee is suing only the City and failed to plausibly allege

13  municipal liability under § 1983, the Court grants the City's motion to dismiss this cause

14  of action with leave to amend.  The Court also notes that the complaint contains no

15  allegations establishing or indicating that City employees discriminated against Lee based

16  on her race or national origin.

c.   **Retaliation (Claim 3)**

18  Lee's § 1983 retaliation claim alleges that "Lee has opposed actions by [the] City

19  that discriminated against her on the basis of her race/national origin and . . . religion."  Id.

20  ¶ 102.  Lee alleges that the City "has taken retaliatory action" by obtaining two inspection

21  warrants for the property, exceeding the scope of the inspection warrants, placing cameras

22  outside her property, and issuing notices and citations.  Id. ¶ 103.  Lee asserts that each of

23  these actions was an "unlawful reprisal for protected activity," and that they "should be

24  considered collectively as part of a continuing campaign of reprisal designed to punish

25  [Lee] for opposing the discriminatory practices of [the] City."  Id. ¶ 104.

26  Here again, Lee has not alleged that the City's actions were caused by, or even

27  linked to, any policy or custom.  That means Lee's allegations are not enough to state a

28  § 1983 claim against the City.  The Court thus grants the City's motion to dismiss this

cause of action with leave to amend.

### d.    Property Searches (Claim 4)

Lee's § 1983 claim based on property searches asserts that "[f]rom October 26, 2017, up to and including the present," the City "engaged and continues to engage in unreasonable searches and seizures." Compl. ¶ 111. This cause of action incorporates Lee's allegations about City employees trespassing onto the property, falsifying information to obtain inspection warrants on two occasions, seeking inspection warrants without prior notice to Lee, exceeding the scope of the warrants, installing cameras outside the property, using "neighborhood informants to monitor" activity on the property, conducting "[u]nnecessary inspections," and engaging in "overhead surveillance" of the property. Id.

Here again, Lee has not alleged that the City's actions were caused by, or linked to, any policy or custom.

The Court also notes that this cause of action appears to have additional defects. Lee has provided no details about any "overhead surveillance," which (in any event) does not always constitute a Fourth Amendment search. See, e.g., Florida v. Riley, 488 U.S. 445, 449–451 (1989). Nor is there anything unlawful about using informants, see United States v. White, 401 U.S. 745, 749 (1971), or placing a camera outside a property to record who comes and goes, see United States v. Taketa, 923 F.2d 665, 677 (9th Cir. 1991). Lee also fails to cite any authority for the proposition that she was entitled to notice before the City sought a warrant to search her property. And the Court is unable to tell whether City employees exceeded the scope of the relevant inspection warrants without knowing the scope of those warrants. The City has also argued that Lee did not timely assert this cause of action based on the dates of the underlying incidents. See Mot. to Dismiss at 15. Lee failed to respond to any of these points in her opposition to the City's motion to dismiss.

The Court thus grants the City's motion to dismiss this cause of action. Despite its apparent weakness Lee's failure to defend it, the Court grants Lee leave to amend.

United States District Court
Northern District of California

C.      RLUIPA Claims

Lee asserts five causes of action under RLUIPA.  Several rest on an erroneous reading of FMC section 18.55.110 or the Land Conservation Contract.  Another omits necessary detail by broadly challenging the entire March 2021 Amended Notice and Order. The Court thus grants the City's motion to dismiss these causes of action with leave to amend.

1.      Legal Standard

Three of RLUIPA's prohibitions are relevant here.

First, RLUIPA "prohibits the government from imposing 'substantial burdens' on 'religious exercise' unless there exists a compelling governmental interest and the burden is the least restrictive means of satisfying the governmental interest." Guru Nanak Sikh Soc. of Yuba City v. Cnty. of Sutter, 456 F.3d 978, 985–86 (9th Cir. 2006) (quotation omitted).  This rule applies if "the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved."  42 U.S.C. § 2000cc(a)(2)(c).  That means "RLUIPA applies when the government may take into account the particular details of an applicant's proposed use of land when deciding to permit or deny that use." Guru Nanak, 456 F.3d at 986.

Second, RLUIPA prohibits the government from imposing or implementing land use regulations "in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1).  A city violates this "equal terms provision" only if it treats a religious assembly or institution "on a less than equal basis with a secular comparator, similarly situated with respect to an accepted zoning criteria." Centro Familiar Cristiano Buenas Nuevas v. City of Yuma, 651 F.3d 1163, 1173 (9th Cir. 2011).  If a City law "appears" to treat religious assemblies or institutions differently than similarly situated secular assemblies or institutions, the City has the "burden" of showing that the treatment results from "a legitimate regulatory

23

1    purpose, not the fact that the institution is religious in nature." Id. at 1171–73.

2        Third, RLUIPA prohibits the government from imposing or implementing a land

3    use regulation that "totally excludes religious assemblies from a jurisdiction" or

4    "unreasonably limits religious assemblies, institutions, or structures within a jurisdiction."

5    42 U.S.C. § 2000cc(b)(3).

6            **2.    Application**

7            **a.    Substantial Burden (Claim 7)**

8        Lee's seventh cause of action asserts that FMC section 18.55.110 "on its face"

9    violates RLUIPA because it is a land use regulation that imposes a substantial burden on

10   Lee's religious exercise.  Compl. ¶¶ 134.  Lee's complaint also asserts that the "City has

11   no compelling governmental interest in excluding all religious uses" from open space

12   areas, and that even if it has a compelling interest in forbidding some religious uses, "it has

13   not used the least restrictive means of achieving whatever that compelling interest would

14   be." Id. ¶ 135.

15       Because this cause of action is based on the faulty premise that FMC section

16   18.55.110 excludes all religious uses from open space areas, it fails.  The Court thus grants

17   the City's motion to dismiss this claim.  Lee may attempt to amend this claim, but must

18   allege a substantial burden based on what FMC section 18.55.110 actually does, or how

19   the City has implemented it.[14]

20       The Court notes that some of Lee's allegations (taken as true) could state an

21   RLUIPA claim that is different from the one Lee attempted to assert here.  Instead of

22   asserting that FMC section 18.55.110 facially violates RLUIPA, Lee might have asserted

23   that the City's implementation of FMC section 18.55.110 violates RLUIPA.  See 42

24   U.S.C. § 2000cc(a)(1).  Informing a person that she cannot use dangerous or non-

25

26   ───────────────────────

     [14] Lee appears to assume, without support, that if a city's zoning scheme does not expressly permit
27   private prayer, then private prayer is not allowed on any property.  Lee also assumes, without
     support, that if a "house of worship" (i.e., a quasi-public religious structure) is not permitted on a
     particular piece of property under a City's zoning laws, the zoning scheme violates RLUIPA,
28   regardless of whether certain features of the property make it unsuitable for such use.  See, e.g.,
     Opp. at 23 (citing Compl. ¶ 42).

United States District Court
Northern District of California

compliant buildings for any purpose, including prayer, is one thing; telling a person that she can pray only in specific, limited areas on a property (and not pray anywhere else on the property) is another.  Lee's allegations, while not entirely clear, seem to state that in implementing FMC section 18.55.110, City employees told her that she could pray only in limited, specific places.  See Compl. ¶ 49.  If true, that could constitute a substantial burden on Lee's religious exercise, and might not be narrowly tailored to a compelling governmental interest.  See 42 U.S.C. § 2000cc(a)(1).[15]  But that is not the cause of action before the Court.

### b.    Unequal Terms (Claim 8)

Lee's eighth cause of action states that FMC section 18.55.110 "on its face violates RLUIPA because it treats religious institutions . . on less than equal terms than non-religious institutions."  Id. ¶ 145.

This cause of action also fails.  Again, it rests on the premise that section 18.55.110 precludes all religious uses within the City's "open space" area.  Id. ¶ 147.  That is not true.  FMC section 18.55.110 does not forbid all religious uses or otherwise treat religious uses differently than other quasi-public uses that are permitted (or not) on the same terms. Nor is there any indication that, in practice, the City treats religious assemblies or institutions differently from "similarly situated" secular assemblies or institutions.  Centro Familiar, 651 F.3d at 1173.  Lee's allegation that her neighbor also violated various City property laws and was treated differently does not establish that the neighbor was similarly situated in general or with respect to any particular zoning criterion.  See id.  The Court thus grants the City's motion to dismiss this claim with leave to amend.

### c.    Unlawful Exclusion (Claim 9)

Lee's ninth cause of action is similar to Lee's seventh and eighth.  It states that FMC section 18.55.110 "violates RLUIPA because it totally excludes religious uses from

---

[15] City employees may have merely been identifying structures that were not condemned, and indicating that Lee could pray in those structures.  But Lee's complaint suggests that the City employees went further, and the Court cannot resolve factual questions at this stage.

United States District Court
Northern District of California

an open space zoning district."  Compl. ¶ 153.  Because that is not true, this claim fails.

Lee may attempt to amend this claim with allegations showing that the City either "totally

excludes religious assemblies from a jurisdiction" or "unreasonably limits religious

assemblies, institutions, or structures within a jurisdiction."  42 U.S.C. § 2000cc(b)(3).

### d.  Abatement Proceedings (Claim 10)

Lee's tenth cause of action states that the City's March 2021 Amended Notice and

Order to Abate Nuisance was "imposed in the implementation of a land use regulation or

system of land use regulations, under which the City . . . makes, or has in place formal or

informal procedures or practices that permit it to make, individualized assessments of the

proposed uses" for property.  Compl. ¶ 163.  Thus, per Lee, the Amended Notice and

Order "purports to be an implementation of one or more land use regulations that imposes

a substantial burden" on Lee's religious activities.  Id. ¶ 161.  That is because if the

structures on the property "are demolished," Lee's religious activities "will be severely

limited in that the private temple and attendant facilities . . . will no longer be available for

. . . use."  Id. ¶ 165.  Lee also states that the March 2021 Amended Notice and Order "is

neither in furtherance of a compelling governmental interest . . . nor . . . the least restrictive

means of furthering that governmental interest."  Id. ¶ 161.  Lee asserts that although the

City "contends that the structures . . . are nuisances or are in some fashion hazardous for

human use," this is not the case, as "the structures[,] which existed before [Lee] purchased

the . . . property[,] are in a better and safer condition now than when [Lee] acquired the . . .

property.  Id. ¶ 164.

The City argues that the Court should dismiss this cause of action because the

Amended Notice and Order "is not based solely on a 'zoning or landmarking law, or the

application of such a law.'"  Mot. to Dismiss at 23 (quoting 42 U.S.C. § 2000cc-5(5)).

Although the Amended Notice and Order refers to some FMC Chapter 18.55 violations, it

also refers to  "violations of other code sections that are not zoning or landmarking laws,

such as the California Building Code, California Electrical Code, California Plumbing

Code, California Mechanical Code, and California Fire Code," plus a "lack of permits" and

1    "failure to undergo environmental review under the California Environmental Quality

2    Act." Id. (emphasis in original).

3         The Court grants the City's motion to dismiss because this cause of action

4    challenges the entire Amended Notice and Order.  As both parties seem to acknowledge,

5    the Amended Notice and Order lists violations of FMC Chapter 18.55 and requires Lee to

6    remedy those violations in ways that would restrict Lee's use of the property.  See Mot. to

7    Dismiss at 23; Opp. at 21.  And nothing in RLUIPA precludes Lee from challenging the

8    Amended Notice and Order merely because it also references violations of other California

9    laws.  See 42 U.S.C. § 2000cc-5(5).  Lee could thus challenge the Amended Notice and

10   Order to the extent its corrective demands implement the City's zoning laws.  But Lee's

11   complaint does not do that.  Indeed, Lee's complaint fails to identify which parts of the

12   Notice and Order constitute applications of zoning laws that limit or restrict Lee's use of

13   the property.  See Compl. ¶¶ 160–70.  And Lee does not argue that the other relevant

14   California laws constitute land use regulations.  See Opp. at 21–22.[16]

15        Thus, the Court grants the City's motion to dismiss this cause of action with leave

16   to amend.  Lee may add necessary detail explaining which parts of the Amended Notice

17   and Order she is challenging and why they violate RLUIPA.

18                    e.    **Land Conservation Contract (Claim 11)**

19        Lee's eleventh cause of action seeks a declaration that "all structures" at issue "are

20   authorized and permitted under the Land Conversation Contract" signed in 1978.  Compl.

21   ¶ 174.  But Lee also asserts that "any attempt to enforce a prohibition contained in [that]

22   contract . . . against use of the . . . property for religious purposes violates . . . RLUIPA" by

23   treating "a religious institution on less than equal terms with a non[-]religious institution".

24   Id.  Lee thus seeks a declaration that Lee's use of the property "as a private religious

25   temple . . . is consistent with" the contract and that "any attempt . . . to compel

26

27   _____
     [16] The Court also notes that the mere fact that the relevant structures "are in a better and safer
28   condition now" than they were in 2010, see Compl. ¶ 164, does not imply that the structures are
     safe or compliant with applicable state and local laws and regulations.

United States District Court
Northern District of California

compliance" with the contract via limiting the use of the property for "religious purposes" would violate RLUIPA.  Id. ¶ 176.

After the City pointed out that the Land Conservation Contract does not treat religious institutions differently than non-religious institutions and that applying the contract to limit religious uses of land on the same terms that it limits secular uses of land would not violate RLUIPA, see Mot. to Dismiss at 24–25, Lee has attempted to recharacterize this cause of action as merely seeking a declaration that the structures at issue in this lawsuit do not violate the Land Conservation Contract, see Reply at 22–23. But that purely contractual question has nothing to do with RLUIPA.  Accordingly, the Court grants the City's motion to dismiss this RLUIPA cause of action with leave to amend.

## IV.    CONCLUSION

Lee's complaint has several structural defects.  First, it contains allegations without any apparent relevance to the claims that Lee asserts.  See supra notes 2–3, 5–8.  Second, it does not contain allegations establishing the elements of those claims.  Third, it rests largely on an erroneous reading of FMC Section 18.55.110.  Fourth, it does not assert some of the legal theories that Lee has belatedly asserted in her opposition to the City's motion to dismiss and in supplemental briefing.  The Court has granted Lee leave to amend her complaint in its entirety.  But the Court advises Lee to prepare an amended complaint with allegations that more rigorously track the elements of the claims that she asserts.

*

For the foregoing reasons, the Court grants the City's motion to dismiss with leave to amend.  Lee may file an amended complaint within 45 days of the date of this order.

**IT IS SO ORDERED.**

Dated: September 28, 2021

CHARLES R. BREYER
United States District Judge